272 N.J. Super. 467 (1994)
640 A.2d 341
PBA LOCAL 160, PLAINTIFF-RESPONDENT,
v.
TOWNSHIP OF NORTH BRUNSWICK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 21, 1994.
Decided April 25, 1994.
*470 Before Judges PETRELLA, BAIME and CONLEY.
Savage & Serio, attorneys for appellant (Thomas J. Savage, on the brief).
Balk, Oxfeld, Mandell & Cohen, attorneys for respondent (Randi Doner, of counsel and on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The Township of North Brunswick (North Brunswick) appeals from an October 29, 1992 Law Division order that confirmed an arbitration award in favor of PBA Local 160 (Local 160) on behalf of Patrolman John Knox. On appeal, it argues: (1) the arbitrator failed to issue his award in accord with relevant law and the specific language of the agreement between the parties; (2) the arbitration award was procured by "undue means" and based on a mistake of law and fact; (3) the arbitrator's decision violated clear and well-settled rules of contract construction; and (4) the arbitrator improperly relied on alleged past practices between the parties. We reverse.
The dispute arises over an interpretation of a collective negotiation agreement between North Brunswick and Local 160. It appears from the findings of the arbitrator that Knox, a North Brunswick police officer, suffered a work-related injury that *471 caused him to miss eleven days of work beginning March 13, 1988.[1] Knox returned to work on May 13, but later missed another five work days in October and December due to his injury claim.[2]
Knox thereafter took a leave of absence in late 1988 or early 1989 and, although the record is not clear as to the actual length of his leave, apparently returned to work on August 20, 1989. In any event, over that period of time Knox had gone to various physicians for treatment relating to his back injury. During that time, North Brunswick paid Knox's full salary and paid all of his medical costs.
On January 23, 1991, Knox requested compensation at an overtime rate of pay for 222 hours, which largely represented off-duty visits to his chiropractor.[3] Local 160 argues that Article 27(C)(6) in the collective negotiation agreement between the parties authorizes the overtime compensation in this case. That particular clause, quoted hereinafter, immediately follows other numbered paragraphs in Article 27(C) that indicate when North Brunswick may require a police officer to submit to a physical examination. Thus, paragraphs 4, 5, and 6, which essentially deal with the same subject, read in pertinent part:
4. An officer who calls off duty as sick may only be required to submit to a physical examination in one of three cases:
a. where the officer has been out on sick leave for five consecutive days;

*472 b. where the officer seeks to return to duty following a work related injury, or
c. where the Township has reason to believe that there has been an abuse of sick leave in accordance with civil service law.
* * * * * * * *
5. An officer shall not be required to submit a doctor's report of an illness or injury at the officer's expense.
6. An officer sent to a Township doctor while off duty shall be paid overtime for the time spent travelling to and from and while at the doctor's office.
The agreement also defines the role of the arbitrator in the event of a contract dispute and provides:
The arbitrator or arbitrators shall be bound by the provisions of this Agreement and restricted to the application of the facts presented to him and relevant to the grievance. The arbitrator shall have no authority to modify or alter in any way the provisions of this Agreement or any amendment or supplement hereto. The decision of the arbitrator shall be final and binding.
In narrowly focussing on the phrase "Township doctor" contained in Article 27(C)(6), the arbitrator determined that North Brunswick owed Knox 333 compensatory hours (222 hours at time-and-a-half). He rejected North Brunswick's contention that Knox had not visited its doctor, because its insurance carrier had paid for all of Knox's visits without challenge and there was no indication of who North Brunswick considered as its doctor. Hence, the arbitrator concluded that this made Knox's doctor North Brunswick's doctor.
In confirming the arbitration award, the Law Division judge relied on the public policy favoring arbitration of labor disputes and concluded that the arbitrator's decision was based on a permissible interpretation of the contract.
Courts do favor arbitration of labor-management disputes, although a difference between public and private employee disputes is recognized. See Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 493, 610 A.2d 364 (1992); County College of Morris Staff Ass'n v. County College of Morris, 100 N.J. 383, 390, 495 A.2d 865 (1985); Communications Workers of America, Local 1087 v. Monmouth County Bd. of Social Services, 96 N.J. 442, 450-451, 476 A.2d 777 (1984); State v. State Troopers *473 Fraternal Ass'n, 91 N.J. 464, 469, 453 A.2d 176 (1982); Barcon Associates, Inc. v. Tri-County Asphalt Corp., 86 N.J. 179, 186, 430 A.2d 214 (1981); Kearny PBA Local No. 21 v. Town of Kearny, 81 N.J. 208, 215, 405 A.2d 393 (1979); Fox v. Morris County Policemen's Ass'n, 266 N.J. Super. 501, 514, 630 A.2d 318 (App.Div. 1993). See also Hillsdale PBA Local 207 v. Borough of Hillsdale, 263 N.J. Super. 163, 180-181, 622 A.2d 872 (App.Div.), certif. granted, 134 N.J. 478, 634 A.2d 525 (1993).
In reviewing an arbitration award in the public sector, the court must determine whether (1) the arbitrator followed the inherent guidelines applicable to public sector arbitration and, (2) the interpretation of the contractual language is reasonably debatable. See County College, supra, 100 N.J. at 390-391, 495 A.2d 865; State Troopers Fraternal Ass'n, supra, 91 N.J. at 469, 453 A.2d 176; Barcon, supra, 86 N.J. at 187-188, 430 A.2d 214; Kearny, supra, 81 N.J. at 217, 405 A.2d 393; Hillsdale, supra, 263 N.J. Super. at 180-181, 622 A.2d 872.
In Kearny, supra, our Supreme Court enunciated the standards for review of an arbitration award in a public sector labor dispute:
In the context of public employment an arbitrator's determinations in binding arbitration are subject to pertinent statutory criteria as well as the public interest and welfare. In the private sector, the parties may authorize the arbitrator to determine legal issues as he deems fit irrespective of whether those determinations are in accordance with the law.... [I]n the public sector the parties do not have this choice, for public policy demands that inherent in the arbitrator's guidelines are the public interest, welfare and other pertinent statutory criteria. [Kearny, supra (81 N.J. at 217, 405 A.2d 393]) (citations omitted) (footnote omitted) (emphasis added).]
See State Troopers Fraternal Ass'n, supra, 91 N.J. at 469, 453 A.2d 176.
N.J.S.A. 2A:24-8 delineates relevant "statutory criteria" under which an arbitration award may be vacated and provides:
a. Where the award was procured by corruption, fraud or undue means;
b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;

*474 c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
"Undue means" as used in N.J.S.A. 2A:24-8a ordinarily encompasses situations where the arbitrator has made a mistake of fact or law that is either apparent on the face of the record or acknowledged by the arbitrator. See Perini, supra, 129 N.J. at 491-497, 610 A.2d 364 (private sector arbitration). Hillsdale, supra, 263 N.J. Super. at 181, 622 A.2d 872 (public sector arbitration); Anco Products Corp. v. T.V. Products Corp., 23 N.J. Super. 116, 124, 92 A.2d 625 (App.Div. 1952) (private sector arbitration); Held v. Comfort Bus Line, 136 N.J.L. 640, 641-642, 57 A.2d 20 (Sup.Ct. 1948) (private sector arbitration). See also McHugh Inc. v. Soldo Const. Co., Inc., 238 N.J. Super. 141, 145, 569 A.2d 293 (App.Div. 1990) (private sector arbitration). Moreover, in the public sector, the concept of "undue means" is "greatly enlarged." Old Bridge Tp. Bd. of Educ. v. Old Bridge Educ. Ass'n, 98 N.J. 523, 527, 489 A.2d 159 (1985); Cf. Perini, supra, 129 N.J. at 520-524, 610 A.2d 364 (Wilentz, C.J., concurring).
Additionally, "[w]hen parties have agreed, through a contract, on a defined set of rules that are to govern the arbitration process, an arbitrator exceeds his powers when he ignores the limited authority that the contract confers." County College, supra, 100 N.J. at 391, 495 A.2d 865. The scope of the arbitrator's authority depends on the terms and conditions contained within the agreement between the parties and, properly, the arbitrator can neither disregard those terms nor rewrite the agreement for the parties. Ibid. As succinctly stated in County College, supra: "where an arbitration award does not draw its essence from the bargaining agreement, it will not be enforced by the courts." Id. at 392, 495 A.2d 865 (citation omitted). See Perini, supra, 129 N.J. at 522, 610 A.2d 364 (Wilentz, C.J., concurring) (quoting *475 Leslie v. Leslie, 50 N.J. Eq. 103, 107, 24 A. 319 (Ch. 1892).[4]
Here, the award fails to conform with the inherent guidelines applicable to public sector arbitration. The agreement delineated the scope of the arbitrator's authority and required that Knox be "sent" by North Brunswick to its doctor before it had an obligation to pay him overtime for the time travelling to and from and while at the doctor's office. In inexplicably disregarding this condition, particularly the term "sent," the arbitrator ignored the contractual provision that prohibited him from modifying or altering in any way the provisions of the agreement. He also erroneously labelled Knox's doctor as North Brunswick's doctor merely because North Brunswick's insurance company paid the medical bills under its health insurance plan. These payments hardly converted a physician-patient relationship into an agency relationship. Such an agency approach would open a Pandora's box and wreak potential havoc where third-party payments are involved.
In addition, the arbitrator "imperfectly executed" his authority, as proscribed by N.J.S.A. 2A:24-8(d), and procured an arbitration award by "undue means," contrary to N.J.S.A. 2A:24-8(a), when he neglected the term "sent." In essence, he rewrote the agreement for the parties by allowing Knox and, for that *476 matter, potentially any other officer to receive overtime compensation for off-duty visits to a doctor, whether or not North Brunswick "sent" that officer to such doctor. Although the agreement should have been his guide, the arbitrator decided to ignore, disregard, and overlook the terms and conditions of that agreement. This he cannot do. Indeed, even if analyzed in the context of the private sector, which affords an arbitrator far greater latitude, discretion, and deference, this award would still be vulnerable because the arbitrator failed to give due regard to the terms and conditions that had been agreed upon by the parties.[5] The arbitrator's determination on its face constituted a manifest disregard of the contractual terms, thereby leading to an unjust result. Perini, supra, 129 N.J. at 496, 610 A.2d 364.
Moreover, the arbitrator's award should have been consonant with the subject matter submitted, i.e., the arbitrator should have simply decided whether or not North Brunswick had "sent" Knox to a township doctor. Instead, he made a determination contrary to the authority vested in him when he awarded overtime compensation for off-duty visits to doctors made by Knox on his own volition.
*477 As the arbitration award failed to draw its essence from the collective negotiations of the parties, and because the arbitrator exceeded the authority granted him in the contract and was not free to disregard the contractual obligation that Knox be "sent" to a township doctor, we are constrained to vacate the arbitration award.
Even if we determined that the arbitrator correctly followed the inherent guidelines applicable to public sector arbitration, Local 160 would fare no better as the interpretation afforded Article 27(C)(6) is not reasonably debatable. We observe that in matters of interpretation, the scope of judicial review of an arbitrator's award in the public sector is confined to determining whether the interpretation of the contractual language is "reasonably debatable." See County College, supra, 100 N.J. at 391, 495 A.2d 865; Old Bridge, supra, 98 N.J. at 527, 489 A.2d 159; State Troopers, 91 N.J. at 469, 453 A.2d 176; Kearny, supra, 81 N.J. at 221, 405 A.2d 393.
Here, it cannot fairly be stated that the interpretation of the contract between the parties is reasonably debatable. Simply put, no interpretation including the term "sent" took place and, hence, any so-called interpretation flowing from that premise could not be deemed reasonably debatable. Stated differently, there is nothing to debate, let alone reasonably debate, given that the arbitrator obviously disregarded the term "sent" in paragraph 6 of the agreement as well as the context of that paragraph in Article 27(C).
This becomes more apparent when the subject clause is read in conjunction with the preceding provisions, which allow North Brunswick to require an officer to submit to a physical examination in three carefully defined situations. If, for instance, North Brunswick had reason to believe that Knox had been abusing his sick leave, it could have required him to submit to a physical examination by sending him to a township doctor. In doing so, North Brunswick then would have had an obligation to pay him overtime for his time travelling to and from and while at the *478 doctor's office. North Brunswick, however, did not send Knox anywhere. Knox chose to go to his doctors on his own volition.
We reverse the order of the Law Division confirming the arbitration award and remand for the entry of an order vacating and setting aside the award as a nullity.
NOTES
[1] Although the arbitrator states that Knox missed eleven days from work between March 13 and May 8, North Brunswick takes the position that he missed the entire period between March 13 and May 13 while receiving his full salary.
[2] Of the sixteen work days missed by Knox due to his work-related injury between March and December, according to Local 160, North Brunswick only deducted five days from Knox's accumulated sick leave time and paid him full salary for each absence.
[3] Knox submitted a breakdown of the 222 hours for time travelling to and from and while at his doctors as follows: 1988  24 hours; 1989  64 hours; and 1990  134 hours. The 222 overtime hours translates into approximately $8,363.
[4] In Leslie the Chancery Court set aside the arbitrators' award as going beyond the scope of the submission in the context of a dispute over the value of a closely held corporation and stated:

The doctrine is obviously fundamental that it is essential to the validity of an award that it be confined to those things which, by the agreement of arbitration, are submitted to the judgment of the arbitrators, and that it shall not extend to those which are not within the terms of the submission.
* * * * * * * *
Nothing, it seems to me, can be clearer, both as a principle of sound law and of plain natural justice, than that where two persons submit, in plain and clear terms, one particular dispute or controversy to the determination of a third, as their judge, his authority must be considered to be inflexibly limited to a decision of that one particular matter, and that any attempt by him to pass judgment upon any other question must be held to be unauthorized and beyond his power, and consequently without the least legal force.
........
[5] Although an arbitrator in the private sector has broad discretion when authorized by the parties in determining legal issues and, when so authorized may even decide issues irrespective of the law, he cannot disregard the terms and conditions of the agreement. In re Arbitration Between Grover and Universal Underwriters Ins. Co., 80 N.J. 221, 230-231, 403 A.2d 448 (1979); Leslie v. Leslie, 50 N.J. Eq. 103, 107, 24 A. 319 (Ch. 1892). See also Communications Workers of America, supra, 96 N.J. at 450, 476 A.2d 777 (1984); State Troopers Fraternal Ass'n, supra, 91 N.J. at 469, 453 A.2d 176; Kearny, 81 N.J. at 217, 405 A.2d 393. Whether in the public or private sector, it is the agreement between the parties that essentially empowers the arbitrator and his function is to comply with the authority given him by the parties. Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144, 155, 393 A.2d 278 (1978); Kearny, supra, 81 N.J. at 217, 405 A.2d 393.