835 A.2d 687

# IN THE MATTER OF THE ARBITRATION BETWEEN FOP LODGE # 97 AND GLOUCESTER COUNTY SHERIFF'S OFFICE.

Superior Court of New Jersey
Appellate Division

Argued October 22, 2003—Decided November 18, 2003.

Before Judges KING, LISA and KIMMELMAN.

*Susan M. Leming* argued the cause for appellant Gloucester County Sheriff's Office (*Brown & Connery,* attorneys; *Ms. Leming and Michael F. Wallace,* on the brief).

*David A. Avedissian* argued the cause for respondent FOP Lodge No. 97 (*Bafundo, Porter, Borbi & Clancy,* attorneys; *Mr. Avedissian,* on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

This case presents a conflict between the policy of arbitration finality and the policy of deciding public safety disciplinary matters on the merits. We conclude that the public policy clearly expressed by *In re Charles Frey,* 160 *N.J.Super.* 140, 388 *A.*2d 1329 (App.Div.1978) (*Frey* ), interpreting *N.J.S.A.* 40A:14–147 controls. A slight and excusable delay in a hearing date beyond the contractual deadline should not result in dismissal of the charges where otherwise deserved discipline was imposed.

The Gloucester County Sheriff's Department appeals from an arbitration award dismissing disciplinary charges and three-day suspensions against two sheriff's officers. The arbitrator dismissed the charges on the technicality that the hearing was not held within 30 days as required by the Collective Bargaining Agreement (CBA).

When the two sergeants in the Sheriff's Department came to work on January 25, 2001 the lieutenant advised them he was changing their schedules. The sergeants raised their voices, conducted themselves in an insubordinate manner, and threatened to go home "sick" if the lieutenant changed their schedules. The

schedules were changed and, as threatened, the sergeants went home rather than work the rest of the day.

The sergeants were served with notice of a minor disciplinary charge on January 29 with a recommended three-day suspension. They immediately requested a hearing, which was scheduled for February 8. On that scheduled date, however, the lieutenant was unavailable because of oral surgery. Martin Abramson, Esquire, the hearing officer and County Counsel, rescheduled the hearing to March 14, more than 30 days after the filing of the disciplinary charges, because he was on vacation during the next several weeks. The officers objected to the postponement. The hearing was eventually held on March 14, 45 days after the charges were filed. Three-day suspensions were imposed.

The officers demanded arbitration which was assigned to an arbitrator on the PERC panel in accordance with the CBA. Article XX(B) of the CBA requires that a disciplinary hearing "*shall be* conducted within thirty (30) days after service of charge." (emphasis added). The arbitrator interpreted the collective bargaining provision narrowly, as allegedly mandated by past practices within the Gloucester County Sheriff's Department. She concluded the charges had to be dismissed because the hearing was not held within the 30–day period. The arbitrator made her interpretation in spite of case law interpreting a similar statutory provision, *N.J.S.A.* 40A:14–147, with more flexibility, allowing for reasonable postponements in the discretion of the hearing officer. *See Frey,* 160 *N.J.Super.* at 143–44, 388 *A.*2d 1329.

I

■ On this appeal, the Gloucester County Sheriff's Office (the Sheriff) argues the arbitrator's ruling contravened applicable law and inferentially sound public policy. The Sheriff relies upon *Frey.* There, an officer was served with charges on March 17, 1977. A hearing was scheduled for April 4, 1977. Because the hearing officer and a complaining witness were unavailable, the hearing was rescheduled for May 11, 1977.

We ruled that the wording of *N.J.S.A.* 40A:14–147 is "clear and explicit and therefore we are not permitted to indulge in any interpretation other than that called for by the express words set forth." *Frey,* 160 *N.J.Super.* at 142, 388 *A.*2d 1329. We stated:

While the statute calls for a hearing to be held "not less than 15 nor more than 30 days from the date of service of the complaint," it does not require the dismissal of the complaint for noncompliance. Nothing in the statute compels such a conclusion. It is only upon a failure to comply with the provisions of *N.J.S.A.* 40A:14–147 "as to the service of the complaint" that a dismissal of the charges is mandated by the statute. The Legislature did not intend by the time limits set forth in *N.J.S.A.* 40A:14–147 to create technical impediments to the resolution of serious charges of professional misconduct affecting the welfare and safety of the community. The notice requirements furnish assurance to a charged officer that the hearing will be had within a reasonable time; they do not deprive the hearing examiner of the inherent power to grant reasonable adjournments for good cause.

[*Id.* at 143, 388 *A.*2d 1329.]

In *Frey* we based our conclusion to reverse the dismissal of charges in large part on a comparison of *N.J.S.A.* 40A:14–147 and *N.J.S.A.* 40A:14–149. The latter provides:

If any member or officer of the police department or force shall be suspended pending a hearing as a result of charges made against him, such hearing, except as otherwise provided by law, shall be commenced within 30 days from the date of the service of the copy of the complaint upon him, in default of which the charges shall be dismissed and said member or officer may be returned to duty.

Relying, in part, on Sutherland, *Statutory Construction* (Sands ed.1973), § 51.03 at 298, we continued:

Obviously, the Legislature intended that charges pending against a police officer be dismissed for failure to commence a hearing within the 30–day period only when that police officer was suspended pending the hearing. Such is not the case here. If our Legislature had intended that charges against a police officer, who had not been suspended, be dismissed when a hearing was not held within 30 days, it could readily have done so. Since the Legislature did not choose to do so, it obviously did not intend such a result.

[*Frey,* 160 *N.J.Super.* at 144, 388 *A.*2d 1329.]

If the Legislature wanted to require dismissal of charges in a situation under *N.J.S.A.* 40A:14–147, it could have done the same thing as it did in *N.J.S.A.* 40A:14–149.

We also relied on statutory history. Former *N.J.S.A.* 40:47–6, the source for *N.J.S.A.* 40A:14–147, stated in relevant part:

> [E]xamination shall be commenced not less than fifteen days nor more than thirty days after said copy of such charge or charges shall have been so served.
>
> It is the intent of this section to give every person against whom a charge or charges for any cause may be preferred under this article a fair trial upon said charge or charges and every reasonable opportunity to make his defense if any he has or chooses to make and that in event of failure of compliance with any provision of this section, such charge or charges shall be dismissed.

The source for *N.J.S.A.* 40A:14–149, former *N.J.S.A.* 40:47–8, read:

> If any officer, member of employee in any such department shall be suspended pending trial on charges, such trial shall be commenced within thirty days after service of a copy thereof upon him, otherwise the charges shall be dismissed and the officer or employee returned to duty.

We noted that *N.J.S.A.* 40A:14–149 contains virtually identical language to its source, but there are significant differences between *N.J.S.A.* 40A:14–147 and its source. We stated:

> The Legislature specifically altered the language of R.S. 40:47–6 in enacting *N.J.S.A.* 40A:14–147 of the 1971 revision of former Title 40. The phrase "examination shall be commenced not less than fifteen days nor more than thirty days after said copy of such charge or charges shall have been so served" and the provision for dismissal of the complaint only upon failure to comply with the service requirements demonstrate the legislative intent to eliminate the harsh consequence of dismissing a charge for failure to hold a hearing within the 15 to 30–day time period when no suspension occurred pending the hearing.
>
>   [*Frey,* 160 *N.J.Super.* at 144–45, 388 *A.2d* 1329.]

We reversed the dismissal of the charges in *Frey* and refused to allow technical impediments to prevail over a hearing on the merits.

██ Counsel for the correction officers relies on Article II, Section D, subsection four of the CBA. Counsel claims subsection four provides that, in the event of an ambiguity in a phrase of the agreement, the arbitrator is to "consider past practice to the extent necessary to clarify the language of the Agreement." Referring to *Frey,* counsel argues "there is no authority which stands for the proposition that the interpretation of a statute (which is similar in form to an employee's right set forth in a CBA) takes precedence over the contract's language and past practice." But, counsel for the officers does not cite any authority for his proposition that the contract's language, or previously

unchallenged past practices, should take precedence over our case law and the statute, both sound expressions of public policy. "Matters of public policy are properly decided, not by negotiation and arbitration, but by the political process. This involves the panoply of democratic institutions and practices, including public debate, lobbying, voting, legislation and administration." *In re Local 195 v. State*, 88 *N.J.* 393, 402, 443 *A.*2d 187 (1982).

Counsel for the officers also misinterprets Article II, Section D, subsection four of the agreement. The section states, "The arbitrator *shall not* consider any past practice precedent except to the extent needed to clarify language of this Agreement." (emphasis added). Respondents' counsel's misinterpretation is significant. It makes subsection four sound as if the parties have a more deferential attitude towards past practice, when in fact subsection four is a negative prohibition on the use of prior practice save for certain circumstances.

The Sheriff's counsel asserts that Article XX, Section B does not present an ambiguity to which Article II, Section D, subsection four applies. In essence, she argues that an omission is not perforce an ambiguity. An omission could well be intentional. She argues that the omission in Article XX, Section B most likely derived from *N.J.S.A.* 40A:14–147, which would not require a dismissal in this case. Indeed, in the arbitrator's final decision, she stated that the language of Article XX was "clear and unambiguous." If so, Article II, Section D, subsection four specifically directed her not to consider past practices.

We reject the arbitrator's dubious construction of the CBA compelling a dismissal where the hearing was held just two weeks beyond the contractual deadline. The excuse for the delay was justified and not contrived. The corrections officers were not prejudiced by the two-week delay. Neither the CBA, the statute, nor the case law compelled dismissal of the charges. The public policy to provide a reasonably prompt hearing before any suspension was upheld. But the public policy to dispose of disciplinary

charges against those entrusted with ensuring the public safety was thwarted.

We are, of course, ever mindful of the Supreme Court's comments in *Tretina Printing, Inc. v. Fitzpatrick & Assoc., Inc.*, 135 *N.J.* 349, 364–65, 640 *A.*2d 788 (1994), pertinent to this delicate subject of collective bargaining in the public-safety sector:

> Similarly, in a public-sector arbitration setting, a court can properly vacate an award because of a mistake of law. *Communications Workers v. Monmouth County Bd. of Social Servs.*, 96 *N.J.* 442, 476 *A.*2d 777 (1984). That exception is necessary because public policy demands that a public-sector arbitrator, who must consider the effect of a decision on the public interest and welfare, issue a decision in accordance with the law. *Kearny PBA Local # 21 v. Town of Kearny*, 81 *N.J.* 208, 217, 405 *A.*2d 393 (1979).
>
> [*Tretina*, 135 *N.J.* at 364–65, 640 *A.*2d 788.]

Also relevant is *Office of Employee Relations v. Communications Workers of America*, 154 *N.J.* 98, 112, 711 *A.*2d 300 (1998), where the Court stated:

> Generally, courts will accept an arbitrator's interpretation so long as the interpretation is reasonably debatable. *Old Bridge Tp. Bd. of Educ. v. Old Bridge Educ. Ass'n*, 98 *N.J.* 523, 527, 489 *A.*2d 159 (1985). A distinction exists, however, between public and private employment disputes. *PBA Local 160 [v. Tp. of North Brunswick*, 272 *N.J.Super.* 467, 472, 640 *A.*2d 341 (App.Div.), *certif. denied*, 138 *N.J.* 262, 649 *A.*2d 1283 (1994) ]. When reviewing an arbitrator's interpretation of a public-sector contract, in addition to determining whether the contract interpretation is reasonably debatable, the court must also ascertain whether the award violates law or public policy. *Communications Workers of America v. Monmouth County Bd. of Social Services*, 96 *N.J.* 442, 448, 453, 476 *A.*2d 777 (1984); *PBA Local 160, supra*, 272 *N.J.Super.* at 473, 640 *A.*2d 341.

We reverse the arbitrator's decision and reinstate the discipline imposed by the hearing officer.

Reversed.