**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3175-22

TOWNSHIP OF
PISCATAWAY,

     Plaintiff-Respondent,

v.

POLICEMEN'S BENEVOLENT
ASSOCIATION LOCAL 93,

     Defendant-Appellant.

_____

> Argued January 8, 2023 – Decided January 17, 2024
>
> Before Judges Sabatino and Mawla.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2340-23.
>
> Leonard C. Shiro argued the cause for appellants (Mets Schiro & McGovern, L.L.P., attorneys; Nicholas P. Milewski, of counsel and on the briefs).
>
> Michael R. Burns argued the cause for respondent (Rainone Coughlin Minchello, LLC, attorneys; Michael R. Burns, of counsel and on the brief).

PER CURIAM

This dispute—which the parties have litigated before a labor arbitrator, a Superior Court judge, and then this appellate court—concerns whether a municipal police officer should have been allowed to take a single day off from work three years ago.

Upon interpreting the police union's contract with the municipality, the arbitrator ruled the officer was not technically entitled to his requested day off, but that his employer was obligated to try to find another officer to replace him and "unreasonably denied" his request. The employer appealed, and the trial judge vacated the award pursuant to N.J.S.A. 2A:24-8(d). The judge remanded the matter back to the arbitrator for further consideration of whether the calculation of applicable manpower levels within the officer's squad should have included an officer who was out on family leave.

As explained in this opinion, we affirm the trial court's order, with a slight amplification of its reasoning. The remand to the arbitrator should now proceed as ordered.

I.

Plaintiff-respondent Township of Piscataway ("the Township" or "the employer") employs approximately forty to forty-two law enforcement officers. Seven officers usually work per each shift.

A-3175-22

Defendant-appellant Policeman's Benevolent Association Local 93 ("the PBA") is the labor union that represents the police officers employed by the Township.

To understand the background of this matter concerning an officer's use of a personal day, we present several of the relevant portions of the applicable Collective Negotiations Agreement ("CNA") between the Township and the PBA.[1]

Most pertinent here is Article XIV entitled "Personal Days." The two Sections of Article XIV state as follows:

ARTICLE[] XIV PERSONAL DAYS

Section 1. Each Employee shall be allowed four (4) personal days in each calendar year of this Agreement. One (1) additional personal day is allowed in lieu of one-half (1/2) day off Christmas Eve and one-half (1/2) day off New Year's Eve. The Employer shall, furthermore, make every effort to revise such personnel policy so that, to the greatest extent possible, such personal days may be taken by employees when requested.

Section 2. For the purposes of two of the personal days, an individual may give four (4) hours notice. In the event the Watch Commander determines that he must have the position staffed <u>as a result of duty requirements</u>, the Watch commander shall have the

---

[1] We were advised by counsel that the CNA is about to be re-negotiated this year, which diminishes the significance of our opinion.

A-3175-22

responsibility of obtaining a replacement. If a replacement is obtained the officer will be granted the personal day and the replacement shall receive the proper overtime compensation for filling the position. **The Watch Commander shall not unreasonably deny any request. Personal emergency situations shall not be limited by the context of the above language.**

[(Emphasis added).]

As counsel on the appeal agreed during oral argument, the term "duty requirements" used in Section 2 of Article XIV above means the same thing as "manpower requirements"[2] as set forth in Article V(A), the "Patrol Section" part of the CNA. Section 6 of Article V(A) reads in pertinent part as follows:

Article V(A) Patrol Section

. . . .

Section 6: Man-Power Requirements

The following Man-Power Requirement shall be in effect for all squads assigned to the Patrol Section. On those occasions when there is insufficient man-power, the Shift Supervisor shall make all efforts possible to request or hire additional man-power to fulfill this requirement.

Due to the increase in the minimum man power requirement on the day shift (from 5 to 6 officers minimum), those officers on day shift (squads A & B)

---

[2] Sometimes variously expressed in the CNA as "man-power," "man power," and "manning."

A-3175-22

shall have one (1) day per year in which they can use their contractual leave time (and compensatory time) and have the minimum man power requirement drop by one (1) officer from six (6) to five (5).

They can use this one day at their discretion unless a police emergency exists which would make dropping the minimum manning requirement inappropriate and except on Memorial Day, July 4th and Election Day (in November).

If more than one officer per shift wants to use this day at the same time there by reducing minimum manning by two or more, only one (1) officer will be granted the time off in order of seniority so that minimum man power will be reduced by only one officer.

The minimum shift strength will always be at least two (2) officers above the minimum manning requirement for any given shift thereby providing the opportunity for at least two (2) to be off at a time on any given shift except in the event of a police emergency. For example, should minimum manning requirement be reduced from six (6) back to five officers on the day shift, shift strength will be at least seven (7) officers.

Notwithstanding anything else to the contrary contained herein, the parties agree that manning, overtime decisions and assignments are solely the prerogative of the Employer to the extent prescribed by law and are not subject to negotiations or arbitration, except to the extent that impact negotiations on terms and conditions of employment may be, by law, required as the result of new managerial decisions by the Employer.

A-3175-22

Additionally, Section 14 of Article V(A) specifies what is termed a "manpower alternative" procedure, whereby an officer who requests time off may be permitted to propose another colleague to take the officer's place to meet minimum manpower requirements, subject to the approval of the squad supervisor:

> Section 14: Manpower Alternative
>
> On those occasions when a member of any squad shall request time off which cannot be approved <u>due to manpower requirement</u>, said member may be allowed <u>to have another member of equal rank work in said member's place</u>. However, the member requesting the time off must obtain written agreement from the alternative employee and approval from his or her squad supervisor prior to that date, indicating which member shall be reporting for duty.
>
> Any member who shall agree to work another member's tour of duty shall be held responsible for all duties and departmental regulations as if he had been normally scheduled to work on that date.
>
> [(emphasis added).]

Bearing in mind these provisions, the relevant sequence of events is as follows. On January 30, 2021, Police Officer Nicholas Vaughn requested to take a personal day off two days later, on February 1, 2021. His request was not based on any personal emergency.

A-3175-22

Vaughn's supervisor initially approved the request. However, the approval was rescinded after the supervisor concluded that allowing Vaughn to take the day off would drop the squad's staffing below minimum manpower requirements. According to the Township, that is because two other officers would not be working that day: one officer who already had obtained a personal day off and another who was out on family leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2612.

Vaughn declined to exercise his once-per-year right under the second unnumbered paragraph of Section 6 of Article V(A) to use his contractual leave time to have the minimum manpower requirement for his shift lowered by one officer. He instead attempted under Section 14 of Article V(A) to find another officer to cover for him that day, without success.

The supervisor, meanwhile, did not want to pay another officer overtime to replace Vaughn, and, as the arbitrator found, did not attempt to secure a replacement. Consequently, Vaughn was unable to take the day off on February 1, 2021.

Following these events, the PBA filed a grievance on Vaughn's behalf, contending the Township violated the CNA by refusing to seek a replacement. The grievance was referred to an arbitrator by the Public Employment Relations

Commission. The arbitrator considered testimony over two days from several police witnesses[3] as well as various documents, including the CNA. The parties stipulated that the question for the arbitrator to resolve was "Whether the employer violated Article XIV of the [CNA] in withdrawing approval for a personal day for Officer Nicholas Vaughn? If so, what shall be the remedy?"

On January 25, 2023, the arbitrator issued an award in favor of the PBA. Among other things, Vaughn had made a timely request for a personal day off, meeting the four-hour notice period as mandated by Section 2 of Article XIV. Despite that proper notice, the arbitrator found the employer had made "no effort" to seek a replacement officer. The arbitrator reasoned that the employer had an obligation under Sections 1 and 2 of Article XIV to make such an effort, even if it would cause the employer to pay the replacement overtime. In that regard, the arbitrator focused on the language within Section 1 that directs the employer to "make every effort to revise such personnel policy [allotting four personal days] so that, to the greatest extent possible, such personal days may be taken by employees when requested."

The Township appealed the arbitrator's decision to the Law Division pursuant to N.J.S.A. 2A:24-8. After considering the matter, the trial judge

---

[3] We have not been furnished with transcripts of the testimony.

A-3175-22

issued an order and written opinion on June 14, 2023, vacating the award. The judge found that the arbitrator had "overstepped" his authority in construing the CNA to require the employer to "always" seek replacement coverage for the officer in the circumstances presented. As described by the judge, the arbitrator "significantly altered a larger Township-wide practice and the way the [Police] Department functions." As such, "[t]he reach of this arbitration award was never intended by the parties, and it amounts to the arbitrator exceeding his powers."

Accordingly, the trial court remanded the matter and directed the arbitrator to re-examine the matter, this time with a narrower focus. Specifically, the court instructed the arbitrator to address solely the appropriate "consideration of FMLA [absences of officers] as a category for [calculating] minimum manpower staffing [levels]."

The PBA now appeals, urging that the arbitrator had made the correct decision and that his decision should be reinstated. At the very least, the PBA contends the arbitrator's ruling was "reasonably debatable," and therefore should not be disturbed by the court. The Township disagrees. It has not cross-appealed the remand ordered by the trial court on the FMLA issue.

II.

9

Briefly stated, the applicable principles that guide our review are well established. The New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -36, enumerates several narrow grounds for a court to set aside an arbitration award. One of those grounds, which was relied upon by the trial court, is set forth in subsection (d) of N.J.S.A. 2A:24-8. "Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made."

As the trial court recognized, the court's authority to set aside an arbitration award under N.J.S.A. 2A:24-8(d) is not to be exercised lightly. To promote a sense of finality and to ensure judicial efficiency, there is "a strong preference for judicial confirmation of arbitration awards." Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007) (quoting N.J. Tpk. Auth. v. Local 196, 190 N.J. 283, 292 (2007)). In public sector arbitration, courts are to accept an arbitrator's award so long as the award is "reasonably debatable." Ibid. See also Policemen's Benevolent Ass'n, Local 11 v. City of Trenton, 205 N.J. 422, 429 (2011).

That said, as the trial court also recognized, in numerous situations the courts have set aside arbitrator decisions where they have misapplied the governing law or contract provisions, and the rulings are not "reasonably

10

debatable." See, e.g., Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (in which the Court held that an arbitrator had applied the wrong legal standard to a public employee's conduct); City Ass'n of Supervisors and Adm'rs v. State Operated Sch. Dist. of Newark, 311 N.J. Super. 300, 312 (App. Div. 1998) (setting aside an arbitration award that misinterpreted the clear language of the parties' agreement); PBA Local 160 v. Twp. of N. Brunswick, 272 N.J. Super. 467, 475 (App. Div. 1994) (overturning an arbitration award that disregarded an explicit term of a negotiated agreement).

We review the trial court's decision vacating the arbitration award de novo. Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019). Having done so, we affirm the trial court, with a slight amplification of its reasoning.

As the trial court recognized, the arbitrator erred and exceeded his authority by adopting an overly expansive interpretation of the Township's obligations to find a replacement officer whenever an officer requests a personal day off that would entail reducing the coverage on the shift below minimum manpower levels. Under Section 2 of Article XIV, the watch commander only has such an obligation in certain defined instances. As the first sentence of Section 2 provides, those instances only can arise twice per calendar year, when

11

the officer seeks to use the first two of four allotted personal days, which counsel have explained to us are known as "paid" personal days. Once those two eligible paid days are exhausted, the watch commander no longer has an obligation to seek a replacement.

Here, Vaughn apparently did not ask to use one of his two "paid" personal days. Nor did he invoke his annual one-time right to have the minimum manpower level reduced by one officer. Instead, he placed the onus on his supervisor to either find a replacement or pay another officer overtime. The arbitrator failed to recognize that under Section 2, the Township does not "always" have a duty to find a replacement.

Moreover, the arbitrator's reasoning failed to take into proper account the declaration expressed in Article VI(A), Section 6 of the CNA, in which the parties agreed that "the manning, overtime decisions and assignments are solely the prerogative of the Employer to the extent prescribed by law." Such prerogatives "are not subject to negotiations or arbitration, except to the extent that impact negotiations on terms and conditions of employment may be, by law, required as the result of new managerial decisions by the Employer."

The arbitrator further went astray in placing undue reliance upon Section 1 of Article XIV, which confers an obligation upon the employer to "make every

effort to revise such personnel <u>policy</u>" to assure that personal days can be used by officers to the greatest extent possible. (emphasis added). Section 1 literally is about the adoption of personnel "policy," not individualized day-to-day staffing decisions such as the one here involving Vaughn.

As the trial judge correctly perceived it, the real nub of the dispute here is about a threshold manpower question. Is it appropriate, or not, under the CNA to count officers who are on FMLA leave towards the calculation of minimum manpower levels? The Township says yes, and the PBA says no. The CNA contains no explicit language resolving this fundamental question.

The arbitrator's decision is not entirely clear on this point, as it seemingly assumed the officer on FMLA leave "used up" one of the two allowable reductions from the minimum manpower level, but nevertheless concluded the CNA "still required the Employer to make an effort to allow Vaughn the day off." The arbitrator's decision is manifestly "imperfect" on this critical point. The trial court sensibly recognized that and directed the FMLA question to be analyzed more closely by the arbitrator on remand.[4]

We therefore affirm the trial court's decision, albeit based on somewhat

---

[4] During oral argument before us, counsel acknowledged it is conceivable that either side might prevail on the remand. The losing side, of course, could pursue a new appeal for review by the Law Division.

amplified and clarified grounds.  The remaining arguments raised by the PBA

lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3175-22