**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0938-24

COUNTY OF PASSAIC
and PASSAIC COUNTY SHERIFF,

    Plaintiffs-Appellants,

v.

POLICEMEN'S BENEVOLENT
ASSOCIATION LOCAL NO. 197,
POLICEMEN'S BENEVOLENT
ASSOCIATION LOCAN NO. 197A,
and POLICEMEN'S BENEVOLENT
ASSOCIATION LOCAL NO. 286,

    Defendants-Respondents.

_____

        Argued December 2, 2025 – Decided December 15, 2025

        Before Judges Chase and Augostini.

        On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1476-24.

        Christopher J. Buggy argued the cause for appellants (Taylor Law Group, LLC, attorneys; Christopher J. Buggy and Leslie S. Park, on the briefs).

Michael P. DeRose argued the cause for respondents (Crivelli, Barbati & DeRose, LLC, attorneys; Michael P. DeRose, on the brief).

PER CURIAM

Plaintiffs, the County of Passaic and the Passaic County Sheriff's Office (collectively, "the County") appeal an October 24, 2024 Law Division order denying their request to vacate a grievance arbitration award. The award favored defendants Policemen's Benevolent Association Local #197 ("PBA 197"), Policemen's Benevolent Association Local #197A ("PBA 197A"), and the Policemen's Benevolent Association Local #286 ("PBA 286") (collectively, "the Unions"). We affirm.

I.

The County employs sheriff's officers and corrections officers who are members of collective bargaining units. The Unions exclusively represent all rank-and-file and supervisory full-time corrections officers in Passaic County's Corrections Division, and all rank-and-file full-time sheriff's officers in the Patrol and Court Divisions of the Passaic County Sheriff's Office ("PCSO").

The County and the Unions individually entered into Collective Negotiation Agreements ("CNA") from January 1, 2007 through December 31, 2014. Article XIV entitled "Medical Benefits" provided:

2

> Upon retirement, the Employer will continue to provide and pay for the above programs. The Employer reserves the right to select the insurance carrier who shall provide such benefits, as long as the benefits are equivalent to or better than those provided by the policies in effect on the date of this agreement.

Additionally, Article XV provided: "The County of Passaic shall pay in full, all medical and prescription premiums for all members who retire with twenty-five (25) years of service or more."

These provisions were in effect when Chapter 78 went into effect in 2011. See L. 2011, c. 78. Chapter 78 required public employees to contribute defined percentages of their healthcare benefit premiums based on annual income. N.J.S.A. 52:14-17.28(c).

Included in Chapter 78 is N.J.S.A. 40A:10-21.1, which phased in the health benefit premium costs payable by public employees in four tiers over the course of four years. N.J.S.A. 40A:10-21.1(a) also stated the minimum "amount payable by any employee under this subsection shall not under any circumstance be less than the 1.5 percent of [the employee's] base salary." The statute required employees pay "one-fourth of the . . . contribution" during the first year (tier one), "one-half" in the second year (tier two), and "three-fourths" during the third year (tier three). N.J.S.A. 40A:10-21.1(a). Tier four, the full premium rate, is reached by the fourth year. Ibid. Retirees with twenty years or more of

3

creditable service as of June 28, 2011, were exempted from payment. N.J.S.A. 40A:10-21.1(b)(3).

Chapter 78's "sunset" provision requires N.J.S.A. 40A:10-21.1 to "expire four years after the effective date," on June 28, 2015. In turn, N.J.S.A. 40A:10-21.2 governs CNAs executed after reaching the tier four rates under N.J.S.A. 40A:10-21.1. It provides parties to a CNA "shall . . . negotiat[e] . . . for health care benefits as if the full premium share was included in the prior contract." N.J.S.A. 40A:10-21.2.

After Chapter 78's enactment, the parties modified their CNAs through Memorandum of Agreement ("MOA") effective January 1, 2015 through December 31, 2018. MOAs for PBAs 197 and 197A retained the original retiree healthcare language. PBA 286's MOA required post-agreement hires to have twenty-five years of service with the county for retiree healthcare qualification. All MOAs also incorporated Chapter 78 contribution requirements.

Based on these MOA's and the implementation of Chapter 78, non-exempt retirees of the Union began making contributions in 2015 at a tier one level. N.J.S.A. 40A:10-21.1(a). Subsequently, full implementation for both current and retired members occurred in 2018 at a tier four level. N.J.S.A. 40A:10-21.1(a). Accordingly, based on the terms of N.J.S.A. 40A:10-21.2, once the

4

2015-2018 MOA expired, the contribution rate became a negotiable term for successor CNAs, with tier four as the default status quo.

Upon expiration of the 2018 MOA's the parties began negotiations for successor agreements. The Unions proposed to eliminate Chapter 78 contributions, but the County rejected that proposal. In 2020, individual negotiations between the County and the Unions stalled, at which point each Union filed separate petitions for compulsory interest arbitration[1].

As part of each interest arbitration process, the County and Unions were directed to submit last and final offers. The County's offer was to eliminate the provisions providing county-funded healthcare for retirees. Although each Union's last and final offer did not contain any offer or proposal to reduce or eliminate Chapter 78 contributions, they objected to this proposed change.

All three interest arbitration awards rejected the County's proposal to eliminate County-paid healthcare for retirees. The awards preserved existing contract provisions unless modified.

In 2021, a dispute emerged over retiree contributions. When the County continued collecting contributions from retirees, the Unions filed separate grievance arbitration requests with the Public Employment Relations

---

[1] See N.J.S.A. 34:13A-14.

A-0938-24

Commission ("PERC"). The parties agreed that these separate grievances should be consolidated, and PERC formally consolidated the matters and appointed an arbitrator.

The County moved to dismiss, arguing Chapter 78 preempted the grievances. The arbitrator denied the motion, determining that a hearing was necessary. In May and June 2023, the arbitrator heard the matter. The County argued retirees must pay contributions under Chapter 78; the Unions asserted retirees should receive healthcare without contributions or only pay the contractually specified 1.5 percent statutory rate.

On April 29, 2024, the arbitrator sustained the grievances, ordered the County to stop collecting Chapter 78 contributions from retirees, and required the County to refund prior retiree contributions.

The County filed a verified complaint and an order to show cause to vacate the award and the action was then transferred to Morris County Superior Court. After the Union filed an answer opposing the application, oral argument was held. On October 24, 2024, the court issued a decision and order denying the County's application.

This appeal follows.

## II.

The standards guiding our review are well known. Generally, "[j]udicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). A trial court's decision to confirm an arbitration award is a conclusion of law, which we review de novo. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013). Similarly, we "review the trial court's decision on a motion to vacate an arbitration award de novo." Yarborough v. State Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018) (citing Minkowitz, 433 N.J. Super. at 136). This court is bound to accept the trial court's factual findings unless "clearly erroneous." Del Piano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 372 N.J. Super. 503, 507 (App. Div. 2004) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995)).

"The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015) (citing Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris, 100 N.J. 383, 390 (1985)). "[T]o ensure finality, as well as to secure arbitration's speedy and inexpensive nature, the exists a strong preference

7

for judicial confirmation of arbitration awards." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) (alteration in original) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)). "Consistent with the salutary purposes that arbitration as a dispute-resolution mechanism promotes, courts grant arbitration awards considerable deference." Borough of E. Rutherford, 213 N.J. at 201.

Although a court's standard of review of a public arbitration award is highly deferential, the New Jersey Arbitration Act, N.J.S.A. 2A:24-1 to -11, provides four limited statutory bases for vacating an arbitration award:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final[,] and definite award upon the subject matter submitted was not made.
>
> [N.J.S.A. 2A:24-8.]

A-0938-24

III.

A.

We begin with the County's argument that the trial court erred in finding the arbitration award was not procured by undue means due to a multitude of mistakes of fact and law. We are not persuaded.

Relevant to this appeal, a grievance arbitrator "imperfectly executes their powers" within the meaning of the statute when they "ignore, disregard, and overlook the terms and conditions of [the] agreement." PBA Loc. 160 v. Twp. of N. Brunswick, 272 N.J. Super. 467, 475-76 (App. Div. 1994). Furthermore, "when a court reviews an arbitration award, it does so mindful of the fact that the arbitrator's interpretation of the contract controls." Borough of E. Rutherford, 213 N.J. at 201; see also N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 548 (2006) ("A deferential standard of review applies to an arbitrator's interpretation of a contract.").

Vacatur may be proper "when it has been shown that a statutory basis justifies that action." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Kearny PBA Loc. #21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). The statutory bases for vacatur include, "[w]here the award was procured by corruption, fraud[,] or undue means . . . [or] [w]here the arbitrators

were guilty of misconduct . . . in refusing to hear evidence, pertinent and material to the controversy . . . ." Ciripompa, 228 N.J. at 12 (quoting N.J.SA. 2A:24-8). "'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record . . . ." Borough of E. Rutherford, 213 N.J. at 203 (quoting N.J. Off. of Emp. Rels. v. Commc'ns Workers of Am., 154 N.J. 98, 111-12 (1998)); see also Middletown Twp. PBA Local 124, 193 N.J. at 11 (holding awards contrary to existing law or public policy may be vacated as procured by undue means).

An arbitrator exceeds her authority where they ignore "the clear and unambiguous language of the agreement." City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist. of City of Newark, 311 N.J. Super. 300, 312 (App. Div. 1998). It is fundamental, "an arbitrator may not disregard the terms of the parties' agreement, nor may [they] rewrite the contract for the parties." Cnty. Coll. of Morris, 100 N.J. at 391 (citation omitted). Moreover, "the arbitrator may not contradict the express language of the contract." Linden Bd. of Educ., 202 N.J. at 276.

Applying these principles to the matter before us, the record shows the grievance arbitrator did not reach her decision by undue means based on a

10

mistake of fact or error of law.  The arbitrator reviewed the pertinent three clauses:

> Article XIV – Medical Benefits, 1. (e) Upon retirement, the Employer will continue to provide and pay for the above programs;
>
> Article XIV – Miscellaneous, 9 . . . (d) The County of Passaic shall pay in full all medical and prescription premiums for all members who retire with twenty-five (25) years of service or more; and
>
> (f) All employees in the Union shall be subject to the contributions outline in Chater 78 of Public Law 2011.

The arbitrator then found that Article XIV, paragraph (f) applies to employees, whereas paragraphs XIV (e) and 9 (d.) apply to retirees.  Her decision makes clear that she did not "manifestly disregard" the plain language in the contract but rather interpreted that language after considering the arguments and testimony of the parties.

B.

The County also contends that their final offer in interest arbitration to remove nullified pre-Chapter 78 language did not constitute a negotiation to remove full Tier IV contributions from the parties' agreements.  We are not persuaded.

11

"Compulsory interest arbitration is a statutory method of resolving collective-negotiation disputes between police and fire departments and their employers." Hillsdale PBA Local 207 v. Borough of Hillsdale, 137 N.J. 71, 80 (1994). It is particularly significant for police and fire departments, as these employees are prohibited from striking. The process ensures an alternative, binding, and efficient resolution of disputes, balancing the interests of the public, the employees, and the employer. See Township of Aberdeen v. Patrolmen's Benev. Ass'n, Local 163, 286 N.J. Super. 372, 376-77 (App. Div. 1996).

As our Supreme Court has explained, interest arbitration "involves the submission of a dispute concerning the terms of a new contract to an arbitrator, who selects those terms and thus in effect writes the parties' collective agreement." N.J. State Policemen's Benevolent Ass'n, Local 29 v. Town of Irvington, 80 N.J. 271, 284 (1979) (Emphasis added). The Court has instructed that "[i]t is to be distinguished from 'grievance' arbitration, which is a method of resolving differences concerning the interpretation, application, or violation of an already existing contract." Ibid.

In interest arbitration, the County proposed removing the free retiree healthcare language, but the Unions opposed this change. By seeking to

12

eliminate the County-paid healthcare in retirement language the Unions' contract, the County was not only placing the topic of retiree healthcare contributions at issue, but was also placing contribution levels at issue. In other words, the County sought to eliminate the language so retirees would continue making Tier IV level contributions for the contracts subject to interest arbitration. As such, the arbitrator was vested with the power of selecting which phrases to include in the CNA and "in effect write[s] the parties' collective agreement." Town of Irvington, 80 N.J. at 284. The interest arbitrator considered both the proposals and ultimately did not award the County its proposals; therefore, the retiree healthcare language became part of the current contracts. These decisions could have been appealed, and these arguments could have been made during the appeals process, but the County failed to do so and is now seeking a second bite of the apple.

C.

We next analyze the County's contention that the grievance arbitration award was not reasonably debatable. "[A]n arbitrator's award resolving a public sector dispute will be accepted so long as the award is 'reasonably debatable.'" Borough of Carteret v. Firefighters Mut. Benevolent Ass'n, Loc. 67, 247 N.J. 202, 211 (2021) (quoting E. Rutherford PBA, 213 N.J. at 201-02). An award is

13

"reasonably debatable if [it is] 'justifiable' or 'fully supportable in the record.'" PBA Loc. No. 11, 205 N.J. at 431 (quoting Kearny PBA Loc. No. 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)). "Under the 'reasonably debatable' standard, a court reviewing an arbitration award 'may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position.'" Middletown Twp. PBA Loc. 124, 193 N.J. at 11 (quoting N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 554 (2006)). "Put differently, if two or more interpretations of a labor agreement could be plausibly argued, the outcome is at least reasonably debatable." Firefighters Mut. Benevolent Ass'n, Loc. 67, 247 N.J. at 212. "If the correctness of the award, including its resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted." Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 443 (1996).

Following an evidentiary hearing, the grievance arbitrator denied plaintiff's grievance, issuing a twenty-three-page written decision. The arbitrator analyzed the provisions of the CNAs and the relevant provisions of Chapter 78 and made findings of fact that are supported by the record. Specifically, the grievance arbitrator found that "[n]either interest arbitrator

14

specifically awarded changes to Chapter 78 contributions to retirees . . . . By not removing the fully paid language as the County proposed, the arbitration awards created a distinction between employees and retirees' benefits, reverting to the parties' terms in existence in their 2014-2017 agreements."  The court confirmed the arbitration award finding that the grievance arbitrator was "persuaded by the contention that the 'plain meaning' of the language [in the CNAs] was clear and that it must be applied as written.  The [a]rbitrators ultimate conclusion was not an unreasonable interpretation and application of the Agreements given their language."  Although we might not have interpreted the CNA in the manner chosen by the Arbitrator, we are satisfied that her interpretation is reasonably debatable, and, therefore, entitled to substantial deference.

## D.

Last, the County argues the court erred in not finding the award violates the public policy embodied in Chapter 78.  We do not dispute the County's point that a public sector arbitration decision may be vacated if "contrary to existing law or public policy," or if it implicates a clear mandate of public policy.  Middletown Twp. PBA Local 124, 193 N.J. at 11 (quoting N.J. Tpk. Auth. v. Local 196, I.F.P.T.E., 190 N.J. 283, 294 (2007)).  But the relevant CNA

A-0938-24

provision, and the effect upon the specified non-exempt retirees, is neither unlawful nor contrary to a clear mandate of public policy. It is a negotiable item.

Contribution levels were fully negotiable for any CNA executed after 2015 when full implementation of the Tier IV rates was complete. See In re Ridgefield Park Bd. of Educ., 244 N.J. at 25 ("the Legislature envisioned that the transition between Tier IV health insurance premium contribution rates set by Chapter 78 and contribution rates negotiated by [public employers] and employees would take place in the negotiations for the next CNA . . ."). Nor does our reading of the statute establish enforcing the award would be contrary to public policy or counter to the legislative history and intent of Chapter 78 in aiding local governments in reducing the line item for employees' health benefit premiums. It created a category of employees for whom the parties could negotiate the contribution rate, and a timeframe in which such negotiations were permitted. The statute expressly contemplated that these items would be negotiated through successor CNAs, as was the case here. The grievance arbitrator's award was not in conflict with public policy, and the trial court was correct to confirm it.

16

To the extent we have not specifically addressed them, any remaining arguments raised by plaintiff lack sufficient merit to warrant discussion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-0938-24