TOWNSHIP OF SPRINGFIELD, PLAINTIFF-APPELLANT, v.
K. EUGENE PEDERSEN, DEFENDANT-RESPONDENT.

Argued January 19, 1977—Decided March 22, 1977.

*Mr. Edward J. Fanning* argued the cause for appellant.

*Mr. Peter J. McDonald* argued the cause for respondent (*Messrs. Ronca and McDonald,* attorneys).

The opinion of the court was delivered by

MOUNTAIN, J. This case presents a single issue of statutory construction. *N. J. S. A.* 40A:14–151 provides that whenever the suspension or dismissal of a municipal police officer is judicially determined to have been illegal, the officer shall be entitled to recover his salary from the date of such suspension or dismissal.[1] The defendant in this suit is admittedly entitled to relief under the act; the only

---

[1]The statutory provision reads as follows:

Whenever any member or officer of a municipal police department or force shall be suspended or dismissed from his office, employment or position and said suspension or dismissal shall be judicially determined to be illegal, said member or officer shall be entitled to recover his salary from the date of such suspension or dismissal, provided a written application therefor shall be filed with the municipal clerk within 30 days after such judicial determination.

[*N. J. S. A.* 40A:14–151]

question is, how much should he recover? At the time of his improper dismissal, defendant was on mandatory sick leave and was not then receiving his regular remuneration. Rather, he was being paid disability benefits in lieu of salary under an insurance plan covering members of the police department. The precise point for determination is whether he is now entitled to recover his regular salary for the period in question, or whether instead, his recovery should be limited to that amount of compensation which he would actually have received but for the illegal dismissal.

Defendant sustained an injury to his knee in April, 1972. Following a period of hospitalization, he returned to light duty in June of that year. Except for a brief interruption for further hospitalization related to the injury, he continued to perform light duty until April, 1973.

On April 13, 1973 the Chief of Police ordered defendant to undergo an intensive course of physiotherapy and placed him on mandatory sick leave. While on sick leave, defendant received, in lieu of salary, disability benefits from the municipality's group health insurance carrier.

On August 2, 1973, following a physical examination by a physician designated by the Police Department, defendant was ordered to resume full duty. His personal physician advised him that he was not fit to do so, and hence he declined.

Disciplinary charges were filed and defendant was suspended. Upon his suspension the insurance payments ceased. Following a disciplinary hearing, the Township Committee found that the charges had been sustained; defendant's dismissal from the police force followed. A trial *de novo* before the County Court led to a reversal of the order of dismissal and the entry of judgment directing that defendant be reinstated with "all the rights and privileges as a member of the Police Department as of August 2, 1973." The Township was ordered to pay defendant his full back salary with interest for the period from August 2, 1973 to July 1, 1974. This included increases in the amount

of salary that had gone into effect during this period. Plaintiff was also ordered to pay defendant accrued allowances including holiday and vacation pay, college credit allowance and plaintiff's stipulated contribution on defendant's behalf to the Policemen's and Firemen's Retirement Fund.

In an unreported opinion the Appellate Division affirmed the judgment of the County Court. We granted plaintiff's petition for certification. 69 *N. J.* 447 (1976).

The legislative purpose sought to be achieved by this statute is reasonably clear. At common law in this State the status of one who is in the public employ determines whether or not he may recover the remuneration that has been denied him by an illegal suspension or dismissal. If he holds an "office," recovery is not available. If he holds a "position," then recovery, potentially at least, is possible. It is well-settled that policemen are municipal officers and not merely the holders of positions. *Mercadante v. City of Paterson,* 111 *N. J. Super.* 35, 38 (Ch. Div. 1970), aff'd o. b. 58 *N. J.* 112 (1971). The leading case in this State for the proposition that the holder of an office cannot recover compensation lost because of illegal suspension or dismissal is *City of Hoboken v. Gear,* 27 *N. J. L.* 265 (Sup. Ct. 1859). There the court described the nature of a public office in these terms,

[I]n the absence of constitutional restriction, the compensation or salary of public officers may be diminished, or their duties increased, or the mode of remuneration be changed during their continuance in office, without any infringement or violation of contract. An appointment to a public office, therefore, either by government or by a municipal corporation, under a law fixing the compensation and the term of its continuance, is neither a contract between the public and the officer that the service shall continue during the designated term, nor that the salary shall not be changed during the term of office. It is at most a contract that while the party continues to perform the duties of the office, he shall receive the compensation which may from time to time be provided by law. [*Id.* at 278]

Thus, the "right to the compensation grows *out of the rendition of the services,* and not out of any contract be-

tween the government and the officer that the services shall be rendered by him." [*Id.* at 279; emphasis in the original.]

Accordingly, there came into being the "no work-no pay" rule applicable to public officers. Nor did it matter that the officer had been prevented from working by the wrongful act of the public employer, as in the case of a suspension later adjudged to have been illegal. As the former Supreme Court laconically observed, "cases do not turn upon the question of why the services were not performed." *Sganga v. Teaneck Township,* 130 *N. J. L.* 218, 220 (Sup. Ct. 1943). *See also De Marco v. Bd. of Chosen Freeholders of Bergen County,* 21 *N. J.* 136, 140–46 (1956); *Note,* "The Right of New Jersey's Governmental Officers and Employees to Recover for Back Pay When Illegally Dismissed or Suspended," 15 *Rutgers L. Rev.* 516 (1961). It was doubtless the seeming injustice of this rule that provoked legislative action.

The first statute addressed to this problem was *L.* 1918, *c.* 139, the lineal predecessor of the act before us today. The sponsor's statement attached to the Assembly Bill which introduced this legislation, read as follows:

This is a bill to protect the employees and officers of municipalities who may be illegally dismissed from their employment. It is now possible under the law to illegally dismiss a man, and when the dismissal is set aside as illegal, it may happen in many instances that the individual cannot recover the salary that is rightfully his because of the law and the decisons in this State. In a word, the Civil Service Law does not give the protection that it ought to give. This bill would remedy that evil and would protect the individual.

With only minor amendments, this statute became *N. J. S. A.* 40:46–34. When Title 40A was created, *N. J. S. A.* 40:46–34 was expressly repealed. *N. J. S. A.* 40A:9–175. It was reenacted, however, without significant modification, as three separate provisions of Title 40A. One applies to "any municipal officer or employee." *N. J. S. A.* 40A:9–172. Another is applicable to "any member or officer of a paid

or part-paid fire department or force." *N. J. S. A.* 40A: 14–23. The third provision, as we have seen, refers to "any member or officer of a municipal police department or force." *N. J. S. A.* 40A:14–151.

■ As has been said, we think that the legislative purpose sought to be achieved by these enactments was to change the harsh rule of the common law which had denied recovery to blameless municipal officials who had been improperly suspended or dismissed from office. We find it hard to believe that the Legislature entertained the further purpose of providing a windfall recovery to such officials to be forthcoming from public funds.

■ We think the statute means, and should be construed to say, that where a municipal official has been denied compensation because of a suspension or dismissal judicially determined to have been illegal, he will become entitled to receive from the municipality exactly the amount of remuneration, together with such other emoluments, if any, as he would have received but for the improper conduct on the part of his employer. We think such an interpretation both fulfills the legislative desire to abrogate the common law rule, in fairness to municipal officials who have been improperly treated, and at the same time gives due concern to the need — often legislatively expressed — to safeguard and protect public funds.

■ Accordingly, we reverse the judgment of the Appellate Division and remand the case to the trial court to determine what amount of compensation, whether in the form of insurance payments, salary, increases in salary or other employee benefits would have been received by defendant during the period of his improper suspension and dismissal, had such improper act not occurred. So far as material thereto, the holding of the County Court that defendant was illegally dismissed shall be binding on the parties. Defendant will be entitled to judgment in his favor for the total amount of these sums. No costs.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—6.

*For affirmance*—None.