COMMUNICATIONS WORKERS OF AMERICA, LOCAL 1087, A LA-BOR ORGANIZATION, PLAINTIFF-RESPONDENT, v. MON-MOUTH COUNTY BOARD OF SOCIAL SERVICES, A CORPO-RATE ENTITY OF THE STATE OF NEW JERSEY, DEFEND-ANT AND THIRD PARTY PLAINTIFF-APPELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF HUMAN SERVICES, DI-VISION OF PUBLIC WELFARE, THIRD PARTY DEFENDANT-APPELLANT.

Argued April 2, 1984—Decided June 21, 1984.

444

*Raymond B. DeRidder* argued the cause for appellant Monmouth County Board of Social Services, etc. (*Raymond B. DeRidder*, attorney; *Michael D. Farren*, on the brief).

*Robert M. Jaworski*, Deputy Attorney General, argued the cause for appellant State of New Jersey, etc. (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *James J. Ciancia*, Assistant Attorney General, of counsel).

*Jesse H. Strauss* argued the cause for respondent (*Reitman, Parsonnet, Maisel & Duggan*, attorneys; *Thomas S. Adair*, a member of the Georgia bar, of counsel).

The opinion of the Court was delivered by

SCHREIBER, J.

A number of civil service employees whose names had been improperly removed from a promotion list sought retroactive pay for the period between the removal of their names from the list and their eventual promotions. In a ruling reversed by the Law Division but ultimately reinstated by the Appellate Division, the arbitrator awarded the employees back pay for that period. We reverse. We hold that the arbitrator lacked the authority to make such a back-pay award, which was not authorized by the parties' collectively negotiated agreement.

The underlying facts and procedural history may be summarized briefly as follows. In August, 1975, the Department of Civil Service (Department) announced a promotional examination for the position of income maintenance specialist (IMS) with the Monmouth County Welfare Board. A job description on file with the Department listed graduation from a four-year course at an accredited college as one of the eligibility requirements for the position. Apparently, the examination announcement did not mention this educational requirement; rather, it listed as an eligibility requirement successful completion of the "Public Welfare Training Program." In fact, no Public Welfare Training Program had ever been established.

Approximately seventeen persons who were employed by the Monmouth County Board of Social Services (Board) as income maintenance technicians (IMTs), the position immediately inferior to IMS, applied for, took, and passed the civil service promotional examination. An IMS promotion list containing the names of those employees and others was certified on December 21, 1976 and January 18, 1977.

The Board protested the certifications of the employees in question because they did not have bachelor's degrees. In approximately March, 1977, the Department ordered that the names of those individuals be removed from the employment list.

The employees appealed to the Civil Service Commission (Commission). The Commission held that substitution of work experience for the college degree constituted sufficient qualification for the position since there was no Public Welfare Training Program and the announcement of the examination had made no specific mention of the alternative requirement of a bachelor's degree. The Commission therefore ordered that the names be restored to the list.

The Board's appeal to the Appellate Division was unsuccessful, and on November 1, 1979, the Department ordered that the individuals be restored to the list and be given "permanent appointments within the normal time period prescribed by Civil Service regulations." The Department also stated: "Permanent appointees will be afforded retroactive seniority to the dates of December 21, 1976 and January 18, 1977." No provision was made for a back-pay differential for the period between the date that their names had first appeared on the promotion list and the date of their actual promotions.

In December, 1979 the employees filed a grievance with the Department seeking retroactive pay. The Manager of Local Government Services in the Department rejected their application, stating that the Commission had no jurisdiction over county compensation plans, that the Commission could not determine retroactive pay, and that "the only avenue of recourse available * * * is through the courts." He also advised the parties that if they had any objections, they should appeal to the Director of Local Government Services within twenty days.

The Communication Workers of America (CWA), the collective representative of the Board's employees, including the individuals involved, instead sought to arbitrate the issue of back pay pursuant to its agreement with the Board. The Board objected and sought to enjoin the arbitration by filing a complaint and Order to Show Cause in the Superior Court, Chancery Division. The court refused to issue an injunction and

ruled that the grievance was arbitrable. It retained jurisdiction.

The arbitrator declined to consider the arbitrability of the dispute because the court had already decided that issue. The arbitrator found that the employees had been promoted to the position of IMS on or about November 28, 1979, with retroactive seniority to December 21, 1976 and January 18, 1977, the dates their names first appeared in the promotion eligibility list. She nevertheless characterized the issue in terms of the effect of the "retroactive promotion" with regard to pay, and concluded that the collective agreement provided for a retroactive increase in pay.

The arbitrator ruled that the promotion date of each applicant for back-pay purposes should be the date that a promotion occurred when the applicant was number one on the promotion list. Though the employer had the right to bypass the person at the top of the list and to appoint any one of the top three, the arbitrator reasoned that it was speculative whether the employer actually would have bypassed the highest eligible grievant. She also decided that if it was not feasible to determine the date when each employee might have been at the top of the certification list at the time a promotion was made, then the only appropriate remedy would be to award back pay from the original dates of the Commission's promotion lists, *i.e.*, December 21, 1976 and January 18, 1977.

CWA sought to confirm the award in the Superior Court. The Board, which joined the Division of Public Welfare of the State Department of Human Services (Human Services) as a third-party defendant, requested that the award be vacated. All parties moved for summary judgment. The trial court granted the defendant's and third-party defendant's motions. It found the matter arbitrable, but decided that the individual employees were officers and that the principle that a public officer is not entitled to compensation for services not rendered (the "no work-no pay" rule) therefore applied. *See Township*

*of Springfield v. Pederson,* 73 *N.J.* 1, 6 (1977). Accordingly, the court held that plaintiffs could not recover the back pay.

The Appellate Division reversed. It agreed that the matter was properly before the arbitrator, but held that the "no work-no pay" rule did not apply because an IMS was not a public officer. It therefore reinstated the arbitrator's back-pay award. We granted the Board's and Attorney General's petitions for certification. 96 *N.J.* 260 (1983).

I

The core issue in this case concerns the scope of the arbitrator's authority. That authority is limited in two ways. First, it is limited by the scope of the parties' contractual delegation. Second, since public employees are involved, it is limited by existing law and public policy.

It is well settled that the arbitrator's authority to resolve a given dispute depends upon the contract between the parties. *Barcon Assocs. v. Tri-County Asphalt Corp.,* 86 *N.J.* 179, 209–10 (1981) (Clifford, J., dissenting); *Goerke Kirch Co. v. Goerke Kirch Holding Co.,* 118 *N.J.Eq.* 1, 4 (E. & A. 1935); *William J. Burns Int'l Detective Agency, Inc. v. New Jersey Guards Union, Inc.,* 64 *N.J.Super.* 301, 307 (App.Div.1960), certif. denied, 34 *N.J.* 464 (1961). Thus, the jurisdiction and authority of the arbitrator are circumscribed by and limited to the powers delegated to him. *Kearny PBA Local # 21 v. Town of Kearny,* 81 *N.J.* 208, 217 (1979); *Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ.,* 78 *N.J.* 144, 145 (1978). These restrictions relate both to the procedure that the arbitrator must apply in resolving disputes and the substantive matters that he may address. Moreover, "[a]ny action taken beyond that authority is impeachable," *In re Arbitration Between Grover & Universal Underwriters Ins. Co.,* 80 *N.J.* 221, 229 (1979), and may be vacated on statutory grounds, *N.J.S.A.* 2A:24–8d (providing for vacation of an award where the arbitra-

tor exceeded or so imperfectly executed his powers that a mutual award upon the subject matter was not made).

Under the terms of the negotiated agreement in this case, unresolved contract grievances—grievances involving alleged "mis-interpretation or mis-application of the terms" of the agreement—are subject to arbitration, and noncontractual grievances generally are not.[1]  The agreement also provides that "[t]he arbitrator shall not have the power to add to, subtract from, or modify the provisions of this Agreement and shall confine his * * * decision solely to the interpretation and application of this Agreement."  Moreover, it states that "he shall confine [himself] to the precise issue for arbitration and shall have no authority to determine any other issues not so submitted to him * * *, nor shall [he] submit observations or declarations of opinions which are not essential in reaching the determination."

The language limiting the arbitrator's authority to the resolution of grievances arising out of the terms of the agreement and denying him the authority to add to, subtract from, or modify its terms is typical of a narrow, as distinguished from a broad, arbitration clause.  *F. Elkouri & E. Elkouri, How Arbitration Works* 65–66 (3d ed. 1960).  Dean Harry Shulman made the following pertinent comments with respect to these restrictive clauses:

> Doubtless these are wise, perhaps even necessary, safeguards—at least before the parties develop sufficient confidence in their private rule of law to enable them to relax the restriction.  And an arbitrator worthy of appointment in the first place must conscientiously respect the limits imposed on his jurisdiction, for otherwise he would not only betray his trust, but also undermine his own future usefulness and endanger the very system of self-government in which he works.  [Shulman, "Reason, Contract, and Law in Labor Relations," 68 *Harv.L.Rev.* 999, 1008–09 (1955).]

---

[1]The contract also states that an employee may seek arbitration of a grievance involving an alleged violation of individual rights specified in Civil Service Law and Rules for which a specific appeal to Civil Service is available, if the grievant has elected to pursue arbitration; such an election is final and binding.  This provision is not relied on here.

Under such narrow arbitration clauses, disputes that do not involve rights traceable to the agreement are beyond the jurisdiction of the arbitrator and therefore are not properly arbitrable. *See, e.g., Boeing Co. v. Local 1609, UAW,* 349 *F.*2d 412, 413 (3d Cir.1965) (where collective bargaining agreement limited arbitration to grievances involving a "specific provision of [the] agreement" and agreement was silent on the subject of Christmas turkeys, dispute arising out of employer's decision to eliminate distribution of turkeys to its employees on Christmas was not arbitrable); *Independent Petroleum Workers, Inc. v. American Oil Co.,* 324 *F.*2d 903, 904–07 (7th Cir.) (where collective bargaining agreement provided for arbitration of "[q]uestions directly involving or arising from alleged violations of the terms" of the agreement, and the agreement did not mention subcontracting, grievance involving subcontracting was not arbitrable), aff'd without opinion by an equally divided Court, 379 *U.S.* 130, 85 *S.Ct.* 271, 13 *L.Ed.*2d 333 (1964); *see also Flintkote Co. v. Textile Workers Union,* 243 *F.Supp.* 205 (D.N.J.1965) (where collective bargaining agreement limited arbitrator's authority to matters "involving the application and/or interpretation of this Agreement" and specified that arbitrator shall not "add to, subtract from, modify or alter any terms of [the] Agreement," court in first instance had to determine arbitrability of dispute by ascertaining whether the right asserted arose out of the terms of the agreement).

■■ Unless the parties provide otherwise, it is also presumed that they intended that their dispute be resolved in accordance with the law. *See In re Arbitration Between Grover & Universal Underwriters Ins. Co., supra,* 80 *N.J.* at 231 (parties intended to have contract interpreted in accordance with the law in absence of provision to the contrary). Furthermore, although parties in the private sector may explicitly authorize the arbitrator to decide legal issues as he deems fit irrespective of the governing law, this freedom is not available in the public sector. The parties in a public employment case cannot clothe the arbitrator with unbridled discretion, "for

public policy demands that inherent in the arbitrator's guidelines are the public interest, welfare and other pertinent statutory criteria." *Kearny PBA Local # 21 v. Town of Kearny, supra,* 81 *N.J.* at 217; *see also New Jersey State Policemen's Benevolent Ass'n Local 29 v. Town of Irvington,* 80 *N.J.* 271, 288–92 (1979) (holding that arbitrated salary and benefits packages for city employees are subject to a state statute setting caps on spending by municipalities); *City of Atlantic City v. Laezza,* 80 *N.J.* 255, 268–69 (1979) (same); *State v. State Supervisory Employees Ass'n,* 78 *N.J.* 54, 79 (1978) (stating that "negotiated agreement with respect to matters beyond the lawful authority of the public employer is impermissible"); *Division 540 v. Mercer County Improvement Auth.,* 76 *N.J.* 245, 252 (1978) (stating that the arbitrator must consider the public interest and welfare in making his decisions).

In this case, moreover, the negotiated agreement contains specific language explicitly circumscribing the arbitrator's authority with respect to back-pay awards. The agreement provides that the arbitrator may "prescribe an appropriate back pay remedy" only when there is a violation of the agreement, and *"provided such remedy is permitted by law and is consistent with the terms of [the] Agreement,* except that [he] may not make an award which exceeds the Welfare Board's authority." (Emphasis added.) This provision makes clear that the terms of the negotiated agreement and the dictates of the law set specific boundaries on the arbitrator's substantive authority to make back-pay awards.

The terms of the negotiated agreement do not expressly provide for back pay for failure to promote. The agreement states that "[a]ny employee who is promoted * * * to another title with a higher salary range shall have his * * * salary adjusted so that it provides an increase in pay of one increment of the present salary range plus the amount (if necessary) to adjust and equalize the employee's salary to the proper step of the new salary range." The agreement thus provides by its

terms for an increase in salary only from the date that an employee is actually promoted. Furthermore, there was no evidence that when the contract was made, the parties intended that back pay should be awarded for failure to place employees on a promotion eligibility list or for failure to promote. Therefore, the arbitrator had no authority under the negotiated agreement to award back pay under these circumstances.

The arbitrator also violated well-settled principles of contract law in making her back-pay award. The polestar of contractual interpretation is the intent of the parties. *Kearny PBA Local #21 v. Town of Kearny, supra,* 81 *N.J.* at 221, citing *Atlantic N. Airlines, Inc. v. Schwimmer,* 12 *N.J.* 293, 301 (1953); *Basic Iron Ore Co. v. Dahlke,* 103 *N.J.L.* 635, 638 (E. & A. 1927). The starting point in ascertaining that intent is the language of the contract. *See E. Farnsworth, Contracts* § 7.16, at 521 (1982). It is also permissible, to shed further light on the parties' intent, to consider and examine the circumstances that existed when the contract was made. *Tessmar v. Grosner,* 23 *N.J.* 193, 201 (1957); *Atlantic N. Airlines, Inc. v. Schwimmer, supra,* 12 *N.J.* at 301; *A. Corbin, On Contracts* § 579 (1951); *E. Farnsworth, Contracts, supra,* § 7.10, at 492–93. However, once the parties' intent is determined on the basis of the evidence available, that intent may not be disregarded to create a new or better contract or to add to, subtract from, modify, or alter any terms of the agreement. *Temple v. Clinton Trust Co.,* 1 *N.J.* 219, 225–26 (1948). The arbitrator, contrary to the authority vested in her, violated these well-established interpretive principles.

The arbitrator's ruling that a back-pay award was authorized by the negotiated agreement was based on the erroneous assumption that the promotions were retroactive to December 21, 1976 and January 18, 1977. The Commission's order did *not* make the promotions of the employees retroactive. The only retroactivity applied to the employees' seniority. The promotions were made on and after November 1, 1979, with no

directive for back pay. Indeed, the arbitrator found that the employees had been promoted on or about November 28, 1979. Therefore, she was mistaken in characterizing the issue before her as the effect of the "retroactive promotion" on the employees' right to a back-pay award. The promotion was not retroactive.

In sum, the contractual authority vested in the arbitrator by the parties circumscribed her jurisdiction. Her award of back pay exceeded that jurisdiction and amounted to an imperfectly executed award. *N.J.S.A.* 2A:24–8d.

## II

In addition to resolving the dispute in accordance with the negotiated agreement, as previously observed, the arbitrator in a public employment case is obliged to resolve it in accordance with the law and the public interest. Moreover, the negotiated agreement here explicitly limits the arbitrator's authority to make a back-pay award to situations in which the law authorizes that remedy. The contract further provides that all promotions are subject to New Jersey Civil Service Law, Rules and Regulations.

The pertinent Civil Service regulations, known as Ruling Number 11, *N.J.A.C.* 10:109–1.1 to –3.11, provide that an employee who is promoted is to have his salary adjusted to the proper step of the new salary range. *N.J.A.C.* 10:109–2.2(k). If the position is less than full time, the salary is to be adjusted proportionately. *N.J.A.C.* 10:109–2.2(1). If an employee is demoted, the salary is to be equalized with the proper step of the lower range. *N.J.A.C.* 10:109–2.2(k)2. The Civil Service regulations make no provision for an award of back pay upon promotion.

It may be argued that the Legislature intended that an award of back pay could be granted only in limited circumstances. This contention would rest on the predicate that the Legislature has prescribed the occasions in which a back-pay award to civil

service employees is warranted. *N.J.S.A.* 11:15–6 [2] authorizes
the Commission to state whether an employee who was re-
moved is to be restored to his position "without loss of pay"—in
other words, with back pay for the period between his removal
and his reinstatement. *N.J.S.A.* 11:15–1 [3] suggests that the
Commission also has the power to grant back pay in certain
other disciplinary situations, such as demotions, because the
statutory provision grants the Commission the same authority
in those circumstances as in the case of removals. Although
*N.J.S.A.* 11:2A–1 [4] implies that the reach of *N.J.S.A.* 11:15–6

[2]*N.J.S.A.* 11:15–6 reads as follows:

The commission shall, within fifteen days after the completion of the
investigation, inquiry or hearing, and sooner if practicable, render a
decision to be forthwith certified to the appointing authority who shall
forthwith enforce the·same.

The decision shall state whether the removal of the employee is ap-
proved, or whether he is to be restored to his position without loss of pay,
transferred to another position in the same class, fined, demoted, suspend-
ed without pay or with reduced pay, for a period not exceeding six months,
or to be reprimanded or otherwise dealt with.

The commission may, when in its judgment the facts warrant it, modify
or amend the penalty imposed by the appointing authority or substitute
another penalty for that imposed, except that removal from the service
shall not be substituted for a lesser penalty.

[3]*N.J.S.A.* 11:15–1 reads:

The commission shall provide by rule for the suspension, without pay or
with reduced pay, fine or demotion of an employee in the classified service
for disciplinary purposes, for an aggregate period not to exceed sixty days
in any year. An employee suspended, fined or demoted by an appointing
authority, in accordance with the rules established under this subtitle, shall
not have a right of appeal to the commission. An employee suspended,
fined or demoted for a period greater than thirty days at one time and for
an aggregate period greater than sixty days in any year shall have the same
right of appeal and the commission shall have the same power of revoking
or modifying the action of the appointing authority as in the case of
removals as provided in sections 11:15–2 to 11:15–6 of this title.

[4]*N.J.S.A.* 11:2A–1 reads:

No employee of the State, or of any county, municipality or school
district of the State shall be suspended, fined, or demoted more than 3
times in any 1 year, nor for more than 5 days at any 1 time, nor for a

may extend to suspensions, fines, or demotions for nondisciplinary purposes as well, *Heath v. Board of Mgrs. of Jersey City Med. Ctr.*, 92 *N.J.* 1, 6 (1983), *N.J.S.A.* 11:15-6, in any event, does not expressly authorize a back-pay award for a period *prior to promotion.* The civil service laws explicitly provide for retroactive pay only in situations involving suspensions, fines, removals, and demotions, and not in situations involving removal from a promotion eligibility list or failure to promote.

A possible implication of these statutory provisions is that the Legislature intended that employees were not to receive retroactive pay for an employer's failure to promote or for removal of names from a promotion eligibility list, and that the public policy of not paying individuals for services they did not perform (the "no work-no pay" rule) is to be respected in that situation. If that were the public policy, the parties could not lawfully contract or authorize an arbitrator to decide otherwise. In *Division 540 v. Mercer County Improvement Auth., supra,* 76 *N.J.* at 252, Justice Sullivan observed that, in resolving issues concerning public employees, an arbitrator "must consider the public interest and the impact of his decision on the public welfare." If those standards of public interest and welfare that circumscribe the arbitrator's authority include the principle of not awarding retroactive pay upon promotions for periods prior to the time of those promotions, the subject matter would not have been arbitrable. However, we need not decide whether the arbitrator's award was contrary to public policy because, in any event, the award exceeded the authority vested in the arbitrator by the negotiated agreement.

period of greater than 15 days in the aggregate in any 1 year or discharged without the same right of appeal to the commission, which shall have the same power of revoking or modifying the action of such authority, as in the case of removal as provided in section 11:15-2 to 11:15-6 of the Revised Statutes.

## III

The judgment of the Appellate Division is reversed and a judgment of dismissal entered on behalf of the defendant and third-party defendant. No costs.

*For reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For affirmance*—None.