**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0506-23

101 HUDSON PROPERTIES,
LLC,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

BIRCH REAL ESTATE
SERVICES, LLC,

      Defendant-Respondent,

and

OLD REPUBLIC NATIONAL
TITLE INSURANCE COMPANY,

      Defendant-Respondent/
      Cross-Appellant.

_____

Argued April 9, 2025 – Decided June 26, 2025

Before Judges Currier, Paganelli, and Torregrossa-
O'Connor.

On appeal from the Superior Court of New Jersey, Law
Division, Hudson County, Docket No. L-4227-22.

Susan E. Galvão (Bleakley Platt & Schmidt, LLP) of the New York and Connecticut bars, admitted pro hac vice, argued the cause for appellant/cross-respondent (Susan E. Galvão, William P. Harrington (Bleakley Platt & Schmidt, LLP) of the New York bar and Zaina S. Khoury (Bleakley Platt & Schmidt, LLP), attorneys; Susan E. Galvão, William P. Harrington, and Zaina S. Khoury, on the briefs).

Ronald Z. Ahrens argued the cause for respondent/cross-appellant (Riker Danzig, LLP, attorneys; Michael R. O'Donnell, of counsel and on the briefs; Ronald Z. Ahrens, on the briefs).

Jeffrey Schreiber argued the cause for respondent (Meister Seelig & Fein, PLLC, attorneys; Jeffrey Schreiber and Eugene Meyers, on the brief).

PER CURIAM

This dispute arises out of a complex real estate transaction involving two interrelated contracts. Prior to closing, plaintiff informed defendant Birch Real Estate, LLC (Birch) that Birch was in breach of the contract and plaintiff requested the return of its deposit monies from defendant/cross-appellant Old Republic National Title Insurance Company (Old Republic).

Birch disputed it had breached the contract and advised plaintiff that the request for the return of the deposit monies was an election to terminate the agreement under the contractual remedies clause of the contract. Old Republic subsequently released the deposit to plaintiff.

2

A-0506-23

When Birch subsequently closed on the interrelated contract, plaintiff filed this action against Birch and Old Republic alleging claims of breach of contract and tort and seeking specific performance.

The court granted defendants' motions to dismiss the complaint under Rule 4:6-2(e). The court also granted Birch's motion for counsel fees as accorded under the contract. The court denied Old Republic's motion for attorney's fees. Plaintiff and Old Republic appeal from the respective orders. After a careful review of the evidence in light of the applicable principles of law, we affirm the orders.

I.

On August 13, 2021, plaintiff and Birch executed a purchase and sale agreement for the property known as Hudson Plaza in Jersey City (HP contract). Under the HP contract, plaintiff would purchase a "[g]round [l]ease . . . for a term of ninety-eight (98) years" for Hudson Plaza from Birch for a total purchase price of $165,000,000 subject to adjustments in the contract. Importantly, the HP contract referenced a separate contract executed the previous day, in which Birch agreed to purchase Hudson Plaza from the fee owner (Mack-Cali Agreement). The HP contract provided that, at the closing and in accordance with the Mack-Cali Agreement, plaintiff would acquire fee title to Hudson Plaza

A-0506-23

in the form of a deed delivered directly from the fee owner before entering into the ground lease with Birch.

Old Republic was designated as the escrow agent and title company for both transactions. Under the HP contract, Old Republic would hold the $5,000,000 deposit in escrow in an interest-bearing account.

The initial scheduled closing date under the HP contract was October 11, 2021. The parties amended the contract several times, postponing the closing date each time but otherwise ratifying the contract. On March 25, 2022, the parties rescheduled the closing date to June 28, 2022.

On June 1, 2022, plaintiff emailed Birch seeking assurances that Birch intended to fulfill its obligations and would perform on the contract since it had growing "concerns that [Birch would] . . . not adhere to the terms of the [HP contract] and intent of the parties reflected [therein]." Plaintiff further stated:

> No [a]mendments to the Mack-Cali [Agreement] are to be entered into without our client's written consent. It is my understanding this has [oc]curred and if so, this action is objected to . . . and not authorized.
>
> The [HP contract] between [the parties] is very clear on the structure of the purchase and sale transaction. For example, [the fee owner] is obligated to deed the Fee Estate directly to [plaintiff]. This structure cannot be modified unilaterally by your client and [the fee owner]. Any attempt to undermine the agreements . . . between [Birch and plaintiff] . . . is not acceptable.

4

> In fulfillment of . . . closing performances under the [HP contract, plaintiff] . . . has incurred hundreds of thousands of dollars in financing cost to be prepared to perform . . . . [Birch] has actual knowledge of these costs and is also aware of [plaintiff's] need to complete with this purchase a significant 1031 tax exchange transaction.

On June 6, 2022, plaintiff requested an update as it had not yet received a response to its prior email. Birch responded the following day, explaining that Birch and the fee owner had amended the Mack-Cali Agreement to allow Birch to pursue a potential assumption of the existing loan on the real property.

Birch also stated that the parties to the HP contract could not proceed with "the original structure" of the deal, because Birch could not "secure leasehold financing," and that, "absent such financing, the transaction as originally contemplated could not close." Birch explained the fee owner had agreed to "cooperate with Birch in pursuing the potential assumption of the existing loan on the property," and that,

> without leasehold financing, the only alternative for Birch to avoid a default under the [Mack-Cali Agreement] and the loss of its deposit money would be to proceed with the assumption of the existing loan, provided that the approval for the assumption can be obtained. Since the existing financing is a securitized mortgage, the approval of an assumption is uncertain and to date Birch has not received full approval.

5

Thereafter, plaintiff consented to a further postponement of the closing date to June 29.

On June 29, 2022, Birch emailed plaintiff stating:

> [D]espite [the parties'] respective efforts . . . , there is no feasible way to close under the structure contemplated by the [HP contract] because of the inability to secure the necessary leasehold financing with the ground lease structure. Accordingly, [g]oing forward, further requests for consent by [plaintiff] to extensions under the [Mack-Cali Agreement], and corresponding extensions of the closing date under the [HP contract], are not meaningful. . . . [I]t is more productive [to] . . . continue . . . discussions to address the fact that [we are] unable to close under the terms of the [HP contract].

On June 30, plaintiff inquired about the status of the transaction and the closing. Birch replied there was no change other than the fee holder wanted to extend the closing one more day and Birch wanted to extend it for several days, but no agreement had been reached.

On July 14, 2022, plaintiff emailed Birch, advising it was aware that Birch had extended the closing date under its agreement with the fee holder under the Mack-Cali Agreement but failed to also extend the HP contract closing date. Plaintiff stated it viewed such action as part of a series of "ongoing breaches under the [HP contract]," and that, without waving any rights, remedies, or claims under the HP contract, it would "provide written notice to [Old Republic

6

that day] to return to [plaintiff] the entire $5,000,000 [e]arnest [m]oney [d]eposit together with any accrued interest thereon."

The following day Birch replied, stating it did not object to the return of the money deposit and interest but disputed that it breached the parties' contract. Rather, Birch viewed the "request by [plaintiff] for the return of the [d]eposit to constitute an election by [plaintiff] under Section 13.1 of the [HP contract as] its remedy to terminate the [HP contract]." Old Republic subsequently released the deposit monies to plaintiff.

In early August, plaintiff told Old Republic that it still intended to proceed with the transaction under the HP contract. Plaintiff certified that Susan Icklan, one of Old Republic's principals, informed plaintiff that the transaction under the Mack-Cali Agreement was "on hold." In a September 13, 2022 email, plaintiff asked Icklan to "[k]indly keep us apprised when[,] if at all the 'hold' is lifted and you . . . have visibility on a projected [c]losing [d]ate," to which Icklan replied "[w]ill do."

On October 7, 2022, Birch and the fee holder closed on the Mack-Cali Agreement without notice to plaintiff. In its certification, plaintiff certified that Icklan stated in an email to counsel that she did not inform plaintiff about the closing because she was instructed by Birch not to share details of the

7

transaction with plaintiff, explaining it was an "[u]ncomfortable situation to be put in."

## II.

Plaintiff filed a verified complaint asserting the following claims: breach of contract and breach of the covenant of good faith and fair dealing against Birch and Old Republic; and negligent misrepresentation and breach of fiduciary duty against Old Republic. Plaintiff sought specific performance against Birch on the HP contract, arguing Birch should be enjoined and compelled to convey fee title to the real property to plaintiff and enter into a ground lease for the real property with plaintiff.

Old Republic and Birch moved to dismiss the complaint under Rule 4:6-2(e). During the oral argument on Old Republic's motion, the court originally stated it would deny the motion and allow discovery to proceed but at counsels' suggestion, the court subsequently granted the motion without prejudice, stating the court would "give . . . plaintiff an opportunity to file an amended complaint to further clarify the claims." The motion court reasoned that more specific allegations could be made in an amended complaint to establish that plaintiff "relied upon representations [made by Old Republic] to [plaintiff's] detriment because [plaintiff] didn't take action to file a lis pendens and to protect [its]

8

interest to get title to the property under the [HP contract]."  The trial court issued a corresponding order the same day.

A week later, the motion court heard arguments on Birch's motion to dismiss.  The provision at issue was Section 13.1 of the HP contract, which states:

> Default by Seller.  In the event the Closing and the transactions contemplated hereby do not occur as herein provided by reason of any default of Seller, Purchaser may, as Purchaser's sole and exclusive remedy, elect by notice to Seller within ten (10) Business Days following the Scheduled Closing Date, terminate this Agreement, in which event Purchaser will receive from the Escrow Agent the Earnest Money Deposit, whereupon Seller and Purchaser will have no further rights or obligations under this Agreement, except with respect to the Termination Surviving Obligations.  Notwithstanding the foregoing, in the event Seller closes title under, the Mack-Cali Agreement, and thereupon Seller defaults in its obligation to close title under this Agreement, Purchaser shall, in addition to its termination right, . . . have the right of specific performance.  Purchaser expressly waives its rights to seek damages in the event of Seller's default hereunder.  Notwithstanding the foregoing, nothing contained in this Section 13.1 will limit Purchaser's remedies at law, in equity or as herein provided in pursuing remedies for any breach by Seller of any of the Termination Surviving Obligations.

Birch argued that plaintiff had given up its right to sue under Section 13.1 because plaintiff elected for the return of its deposit money.  Plaintiff asserted

that Section 13.1 allowed "plaintiff both the opportunity to exercise what it did in terms of demanding the return of the earnest money deposit upon Birch's default, but also . . . to seek specific performance." Plaintiff read the contractual language as stating if Birch closed title under the Mack-Cali Agreement but then defaulted on its obligation to close title under the HP contract, it was entitled to both a return of its deposit and specific performance.

The motion court found that Section 13.1

> sets two conditions for [seeking] . . . specific performance in addition to getting [the] deposit money back. . . . It says . . . they have to close on the Mack-Cali [A]greement, that didn't happen until October of 2022, and thereupon seller defaults in its obligation to close title. . . . [Plaintiff stated] they defaulted well before that . . . .

The court further found

> [a] simple reading of [the language] . . . is, if you close title under the Mack-Cali [A]greement and thereupon, meaning [after] that point [Birch] . . . default[s] under [the HP contract], then [plaintiff] can sue for specific performance. That happened well after [plaintiff] declared [Birch to be] in default, not thereupon.
>
> . . . .
>
> . . . I'm granting the motion to dismiss based upon a plain reading of [the] contract language [of Section] 13.1. I will not rewrite the contract. On that basis alone I'm going to grant the motion to dismiss against Birch. The remedies that . . . plaintiff had were limited by

10

[Section]13.1 to a return of the deposit money as of July which they got. Therefore, I'm dismissing the complaint against Birch.

The trial court dismissed the complaint with prejudice against Birch stating, "[h]ow could [plaintiff] amend [the complaint] if the contract says that you can't get anything but the deposit money back?  So[,] it's with prejudice." The court issued a corresponding order the same day.

On June 29, 2023, Birch moved for an award of attorney's fees and costs under section 18.2 of the HP contract.  The same day, plaintiff filed an order to show cause seeking reconsideration of the dismissal order and to stay proceedings pursuant to Rule 4:42-2 and Rule 4:52-6.  After oral arguments on the motions, the court denied reconsideration and a stay.

The court granted Birch's motion for attorney's fees but did not set an amount of fees, permitting the parties to resolve the issue themselves.  The court subsequently entered a consent judgment pursuant to the parties' agreement awarding Birch attorney's fees and costs of $111,000.

Thereafter, Old Republic moved for reconsideration of the order denying its motion to dismiss with prejudice and sought an award of attorney's fees. After arguments, the court reconsidered and vacated the prior order, dismissing the complaint against Old Republic with prejudice, for the same reasons that it

granted Birch's motion—that plaintiff terminated the HP contract when it took back its deposit monies.

Regarding Old Republic's request for an award of attorney's fees, the court permitted plaintiff to submit a supplemental brief and scheduled a subsequent hearing to decide the issue. After the conclusion of the hearing, the court found that Old Republic was not entitled to an award of attorney's fees and costs as a prevailing party. The court reasoned that sections 17.1(b) and 17.1(c) of the HP contract required plaintiff and Birch to indemnify Old Republic only for claims arising against Old Republic brought by third parties, except those claims arising out of bad faith, gross negligence, or willful conduct.

The trial court also explained that courts generally find indemnity provisions do not apply to a first party seeking the recovery of its fees from another first party in a contract dispute about the contract.

In specifically addressing Old Republic's reliance on Section 18.2 of the contract, the court found "the strict language of that [clause] . . . applies to parties to the contract" and Old Republic asserted it was only a party to the HP contract under articles four, ten, and seventeen. Therefore, the court found it was inequitable for Old Republic to now assert that Section 18.2 was also applicable to it.

12

III.

On appeal, plaintiff asserts the motion court erred in its interpretation of the contractual language as plaintiff was permitted to seek specific performance against Birch under Section 13.1 of the HP contract.  Plaintiff also contends it asserted viable claims against Old Republic and its complaint should not have been dismissed.  In a cross-appeal, Old Republic contends it is entitled to attorney's fees under the HP contract.

Our review of a "Rule 4:6-2(e) motion[] to dismiss for failure to state a claim upon which relief can be granted" is de novo.  Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 108 (2019)).  In considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'"  Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107).  The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts."  Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).  Notwithstanding this standard, if a complaint states no claim that supports relief, the action should be dismissed.

13

Dimitrakopoulos, 237 N.J at 107. "Dismissals under Rule 4:6-2(e) are ordinarily without prejudice. . . . [A] dismissal with prejudice is 'mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted,' or if 'discovery will not give rise to such a claim.'" Mac Prop. Grp. LLC v. Selective Fire and Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022) (first quoting Rieder v. State, 221 N.J. Super. 547, 552 (App. Div. 1987), and then quoting Dimitrakopoulos, 237 N.J. at 107).

A.

We begin with a discussion of plaintiff's assertions against Birch. The essential issues before the motion court, and this court, are whether plaintiff terminated the HP contract, and what remedies plaintiff was entitled to under Section 13.1 at the time of termination or thereafter. Plaintiff argues that Section 13.1 permitted it to demand specific performance in addition to seeking the return of its deposit monies because Birch defaulted on the HP contract after it closed title on the Mack-Cali Agreement.

Plaintiff contends the court erred in reading the word "thereupon" in Section 13.1 as imposing a temporal limitation on its remedies as it "would render illusory [p]laintiff's right to insist upon specific performance." Plaintiff claims such a reading is illogical as it leaves plaintiff with an unrealistic choice

14

of either leaving its deposit in place and waiting, even when Birch indicated that it would not fulfill its obligations, or to ask for the return of the deposit and as a result waive its right to pursue specific performance.

Plaintiff states that under a plain reading of the contract language, the words "notwithstanding" and "in addition to" should be read as imputing a conjunctive ("and") to that section, rather than a disjunctive ("either-or") based on the word "thereupon."

Generally, "'the construction of a contract is a question of law'" and therefore "[t]he interpretation of a contract is subject to de novo review by an appellate court." Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011) (quoting Jennings v. Pinto, 5 N.J. 562, 569-70 (1950)).

The starting point for contract construction is always the language of the contract. Commc'ns Workers of Am., Loc. 1087 v. Monmouth Cnty. Bd. of Soc. Servs., 96 N.J. 442, 452 (1984). Contract terms are to be given their "plain and ordinary meaning." M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002) (citing Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)).

The "polestar" of contract construction is "the intention of the parties . . . as revealed by the language used, taken as an entirety." Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301 (1953); see also Jacobs v. Great Pac. Century

<u>Corp.</u>, 104 N.J. 580, 582 (1986). "[I]n the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded." <u>Schwimmer</u>, 12 N.J. at 301. However, "[i]f the terms of a contract are clear, they are to be enforced as written." <u>Malick v. Seaview Lincoln Mercury</u>, 398 N.J. Super. 182, 187 (App. Div. 2008) (citing <u>Cnty. of Morris v. Fauver</u>, 153 N.J. 80, 103 (1998)).

The trial court found that Section 13.1

> sets two conditions for [seeking] . . . specific performance in addition to getting [the] deposit money back. . . . It says, (a), [Birch has] to close on the Mack-Cali [A]greement, that didn't happen until October of 2022, and thereupon [Birch] defaults in its obligation to close title. . . . [Plaintiff stated Birch] defaulted well before that. . . .

After conducting a de novo sentence-by-sentence analysis of the contractual language, we are satisfied the motion court did not err in concluding plaintiff terminated the HP contract in July 2022 and was only entitled to a return of its deposit monies at that time. Section 13.1 begins by stating:

> <u>In the event [that] the [c]losing and the transactions contemplated hereby do not occur</u> . . . [plaintiff] may, as [plaintiff's] <u>sole and exclusive remedy</u>, elect [to]. . . terminate this Agreement, in which event [plaintiff] will receive from [Old Republic] the Earnest Money Deposit, . . . whereupon <u>[Birch] and [plaintiff] will have no further rights or obligations under this Agreement,</u>

16

> except with respect to the Termination Surviving Obligations.
>
> [(emphasis added).]

This sentence clearly establishes that if Birch defaulted at any point prior to the closing of the HP contract, plaintiff could elect to terminate the HP contract and receive the return of its deposit as its "sole and exclusive remedy." Thereafter, plaintiff and Birch would have no further rights or obligations to one another under the HP contract.

The second sentence reads: "<u>Notwithstanding the foregoing</u>, in the event [Birch] closes title under the Mack-Cali Agreement, and <u>thereupon</u> [Birch] defaults in its obligation to close title under this Agreement, Purchaser shall, in addition to its termination right, shall have the right of specific performance." (emphasis added). While we agree this is conjunctive language, it does not support plaintiff's interpretation.

"Notwithstanding" as defined by the Merriam-Webster dictionary is either an adverb meaning "nevertheless, however" or a conjunction meaning "although." <u>Merriam-Webster's Collegiate Dictionary</u> 848 (11th ed. 2023) (defining "notwithstanding"). "Thereupon" is defined by the Merriam-Webster dictionary as "immediately after that." <u>Merriam-Webster's Collegiate Dictionary</u>, 1296 (11th ed. 2023). Therefore, sentence two is read as: <u>However</u>,

if Birch closes title under the Mack-Cali Agreement, and, <u>after that</u> Birch defaults in its obligations under the HP contract, then plaintiff can seek both the return of its deposit and specific performance.

The third sentence states:

> [Plaintiff] <u>expressly waives</u> its rights to seek damages in the event of [Birch's] default hereunder. Notwithstanding the foregoing, <u>nothing contained in this Section 13.1 will limit [plaintiff's] remedies</u> at law, in equity or as herein provided in pursuing remedies <u>for any breach by [Birch] of any of the Termination Surviving Obligations.</u>

[(emphasis added).]

This sentence also does not support plaintiff's assertion that it retained its right to seek specific performance even after it received the return of its deposit monies and before Birch closed on the Mack-Cali Agreement as it clearly states the only permitted remedies for Birch's breach are the "Termination Surviving Obligations" contained within the contract. The right to demand specific performance was not a surviving remedy.

In its complaint, plaintiff alleged that Birch defaulted on the HP contract in July 2022 when it advised plaintiff that it could not acquire the proper financing and subsequently amended the closing date of the Mack-Cali Agreement without plaintiff's consent. Following the communication from

18

Birch about its inability to procure financing to fulfill its obligations under the Mack-Cali Agreement, and prior to an actual closing on the Mack-Cali Agreement, plaintiff sought and received the return of its deposit. Under Section 13.1 of the HP contract, plaintiff's action resulted in the termination of the contract. Therefore, Birch did not default after a closing on the Mack-Cali Agreement where plaintiff could have received its deposit back and filed a notice of lis pendens under N.J.S.A. 2A:15-7, but rather before a closing, entitling plaintiff only to terminate the contract and collect its deposit. The motion court did not err in concluding plaintiff did not establish a breach of contract claim against Birch.

B.

We turn to plaintiff's contention that the court erred in dismissing its breach of contract claims against Old Republic. Plaintiff asserts that, as a party to both contracts at issue here, Old Republic undertook duties and obligations as the escrow agent and title company to the transactions. Specifically, plaintiff argues that Old Republic is liable for aiding and abetting Birch's breach of the HP contract.

"To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined

19

obligation under the contract, and the breach caused the claimant to sustain[] damages." EnviroFinance Grp., LLC v. Env't Barrier Co., 440 N.J. Super. 325, 345 (App. Div. 2015).

As discussed, under a plain reading of Section 13.1, plaintiff terminated the HP contract when it elected for the return of its deposit. Upon receiving plaintiff's request, Old Republic returned the deposit monies in accordance with its obligations under the HP contract. Old Republic had no further contractual obligations to plaintiff.

The alleged wrongful conduct pled by plaintiff occurred after it terminated the contract and received its deposit. Liability for aiding and abetting "is found in cases where one party 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.'" State, Dep't of Treasury ex rel. McCormac v. Qwest Commc'ns Int'l, Inc., 387 N.J. Super. 469, 481 (App. Div. 2006) (quoting Judson v. Peoples Bank & Tr. Co., 25 N.J. 17, 29 (1957)).

Here, the evidence does not support a conclusion that Old Republic was "generally aware of [its] role as part of an overall illegal or tortious activity," or that it "knowingly and substantially assist[ed] the principal violation." Id. at 483-84 (quoting Tarr v. Ciasulli, 181 N.J. 70, 84 (2004)). Since Birch did not

breach the HP contract, there was no principal violation to aid or abet. Furthermore, the record does not support a finding that Old Republic failed "to perform a defined obligation under the contract." Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 342 (App. Div. 2021) (quoting EnviroFinance Grp., 440 N.J. Super. at 345). The HP contract did not require Old Republic to keep plaintiff informed of the status of the Mack-Cali Agreement closing, especially after it discharged its duty of releasing the deposit monies to plaintiff.

In short, Old Republic fulfilled its duties under the HP contract. Old Republic did not assume any extra contractual duties. Any events that occurred after Old Republic returned the deposit monies to plaintiff are irrelevant as the parties' contractual relationship ended after plaintiff terminated the HP contract.

C.

We need only briefly address plaintiff's argument that the trial court erred in dismissing its claim for breach of the implied covenant of good faith and fair dealing against both defendants.

"Every contract in New Jersey contains an implied covenant of good faith and fair dealing." R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 276 (2001). This covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the

other party to receive the fruits of the contract." Ass'n Grp. Life, Inc. v. Cath. War Veterans of the U.S., 61 N.J. 150, 153 (1972) (quoting 5 Williston on Contracts § 670, 159-160 (3d ed. 1961)). "The party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005) (quoting 23 Williston on Contracts § 63:22, at 506 (Lord ed. 2002)).

Here, plaintiff's allegations in the complaint regarding a claim of breach of the covenant of good faith and fair dealing all occurred following plaintiff's declaration that Birch breached the HP contract and its subsequent election of demand for its deposit monies. The trial court dismissed the complaint finding plaintiff had terminated the contract and was, therefore, barred from relief.

A breach of the implied covenant may be found even if no express term of the contract is violated. Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 423 (1997). Moreover, "a party to a contract may breach the implied covenant of good faith and fair dealing in performing its obligations even when it exercises an express and unconditional right to terminate." Id. at 422.

22

However, the implied covenant cannot override an express contractual term.  Wade v. Kessler Inst., 172 N.J. 327, 341 (2002).  Here, Section 13.1 of the HP contract provides that in the event of Birch's default and if plaintiff elects to terminate the contract and receive the return of the deposit, "[plaintiff] expressly waives its rights to seek damages" other than those remedies deemed as express termination surviving obligations as delineated under other provisions of the contract.  Those sections of the contract do not provide surviving contract remedies.  Therefore, the trial court did not err in dismissing plaintiff's claims of breach of the implied covenant of good faith and fair dealing.

## D.

In light of our determinations, Birch was a prevailing party and thus entitled to recover its reasonable attorney's fees and costs under Section 18.2 of the HP contract.  As the parties stipulated to the amount of the fee award, we need not discuss it further.

## E.

We turn to plaintiff's contention that the trial court erred in dismissing its count of negligent misrepresentation against Old Republic.  Plaintiff alleged: (1) Icklan made "incorrect statements . . . regarding the [Mack-Cali Agreement]

23

being on hold and regarding her intentions to keep [p]laintiff informed;" (2) "that it reasonably relied upon Icklan's statements, believing that Icklan and Old Republic would keep [p]laintiff apprised of the progress of the transaction and ensure [p]laintiff was notified of the rescheduled closing"; (3) "that Old Republic failed to provide that information to [p]laintiff, apparently because it was willing to serve the interests of Birch, its 'client,' to the detriment of [p]laintiff"; and (4) plaintiff's "reliance on . . . Icklan's misrepresentations was reasonable under the circumstances" surrounding the contract and the "longstanding and well-established course of dealing" plaintiff had with Old Republic.

Negligent misrepresentation is "[a]n incorrect statement, negligently made and justifiably relied upon, [and] . . . economic loss or injury sustained as a consequence of that reliance." Green v. Morgan Props., 215 N.J. 431, 457 (2013) (alterations in original) (quoting H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983)).

To determine whether plaintiff has a cognizable claim for negligent misrepresentation, specifically the requirement of justifiable reliance, consideration must be given to the total circumstances under which the alleged reliance occurred, including the contract and the sophistication of the parties.

See Barry L. Kahn Defined Benefit Pension Plan v. Twp. of Moorestown, 243 N.J. Super. 328, 336-37 (Ch. Div. 1990).

As plaintiff alleged in its complaint, these transactions were "complex" agreements that were "heavily negotiated by and between sophisticated parties and their counsel." In June 2022, plaintiff had "growing concerns" about Birch's intention to perform, prompting it to seek reassurances from Birch. In response, Birch advised it did not see a "feasible way" to close and was exploring alternate deals as it no longer believed it was "bound by the terms of the [HP contract]."

Even giving plaintiff all reasonable inferences, the facts demonstrate that the trial court did not err in dismissing the claim of negligent misrepresentation as plaintiff could not have justifiably relied on Icklan's email since: (1) plaintiff was represented by counsel capable of doing their own investigation; (2) plaintiff had already asked for the return of its deposit; and (3) Birch had already clearly conveyed to plaintiff that it considered the contract terminated and was pursuing other options.

F.

We turn to plaintiff's allegations that the court erred in dismissing its claim of breach of fiduciary duty against Old Republic. Plaintiff contends a fiduciary duty existed because "the longstanding relationship between . . . [p]laintiff and

A-0506-23

Old Republic was such that [p]laintiff felt justified in reposing its trust and confidence in Old Republic."

A party alleging a breach of fiduciary duty must establish the existence of a fiduciary relationship. See Namerow v. PediatriCare Assocs., LLC, 461 N.J. Super. 133, 146 (Ch. Div. 2018). In F.G. v. MacDonell, 150 N.J. 550, 563-64 (1997), the Supreme Court explained:

> The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship. . . . The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care. Accordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship.
>
> [(internal citations omitted).]

A breach of fiduciary duty is grounded in tort. In re Est. of Lash, 169 N.J. 20, 27 (2001).

Old Republic was the title and escrow agent under both contracts, requiring it to "hold the . . . [d]eposit in escrow in an interest-bearing account." Under the HP contract, Birch, not Old Republic, would "cause [f]ee [o]wner to convey directly to [plaintiff] by bargain and sale deed the Real Property in the

26

form [of a deed]," following which Old Republic would record the deed. Under Section 17.1(b), Old Republic was "not . . . liable to any party for any act or omission, except for bad faith, gross negligence or willful misconduct."

As discussed, Old Republic discharged its contractual duties when it returned the deposit monies to plaintiff. Plaintiff's allegations regarding a longstanding business relationship between the two are insufficient to constitute a fiduciary relationship because "the relationship between [a title] company and the insured is essentially contractual." Walker-Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 540. Therefore, the trial court did not err in dismissing this claim.

IV.

In its cross-appeal, Old Republic contends the trial court erred in denying its motion for attorney's fees under the Section 18.2 of the HP contract. That section states:

> Recovery of Certain Fees. In the event a party hereto files any action or suit against another party hereto by reason of any breach of any of the covenants, agreements or provisions contained in this Agreement, then in that event the prevailing party will be entitled to have and recover certain fees from the other party including all reasonable attorneys' fees and costs resulting therefrom. . . . The provisions of this Section 18.2 shall survive the entry of any judgment, and shall

27

not merge, or be deemed to have merged, into any judgment.

In addressing plaintiff's claims against it, Old Republic asserted it was only bound under Articles four, ten, and seventeen of the HP contract. These articles do not contain Section 18.2. The trial court found Old Republic was judicially estopped from now arguing that an additional section of the contract was applicable, permitting it to obtain an award of attorney's fees.

A trial court's decision applying judicial estoppel is reviewed for abuse of discretion. In re Declaratory Judgment Actions Filed by Various Muns., Cnty. of Ocean, 446 N.J. Super. 259, 291 (App. Div. 2016). "The doctrine of judicial estoppel operates to 'bar a party to a legal proceeding from arguing a position inconsistent with one previously asserted.'" Cummings v. Bahr, 295 N.J. Super. 374, 385 (App. Div. 1996) (quoting N.M. v. J.G., 255 N.J. Super. 423, 429 (App. Div. 1992)). The doctrine provides "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. . . ." Newell v. Hudson, 376 N.J. Super. 29, 38 (App. Div. 2005) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)). "Although judicial estoppel most often arises when a party takes inconsistent positions in different litigation . . . it can be equally applicable where a litigant asserts inconsistent

28

legal positions in different proceedings in the same litigation." <u>Cummings</u>, 295 N.J. Super. at 385.

During this litigation, Old Republic asserted it was only a signatory party to certain articles of the HP contract. These articles do not contain Section 18.2 which pertains to the recovery of attorney's fees. Thus, the trial court did not err in finding that the doctrine applied.

Alternatively, Old Republic relied on Sections 17.1(b) and (c) in support of its argument for indemnification. The trial court found that those sections required plaintiff and Birch to indemnify Old Republic for claims arising against Old Republic brought by <u>third parties</u>, except for claims arising out of bad faith, gross negligence, or willful conduct. There was no specific language in the sections regarding first party indemnification.

In <u>Boyle v. Huff</u>, 257 N.J. 468, 482 (2024), our Supreme Court recently held

> it is not axiomatic that indemnification is limited only to third-party claims. Rather, indemnification may also apply to first-party claims if that is the clear intent of the parties as expressed by their deliberate word choices when drafting contracts. Those word choices will govern whether an indemnification provision supports a first- or third-party claim for damages.

Section 17.1(b) states:

Escrow Agent shall not be liable to any party for any act or omission, except for bad faith, gross negligence or willful misconduct, and the parties agree to indemnify Escrow Agent and hold Escrow Agent harmless from any and all claims, damages, losses or expenses arising in connection herewith, except to the extent arising out of the bad faith, gross negligence or willful misconduct of Escrow Agent.

Section 17.1(c) provides:

Escrow Agent shall not be required to defend any legal proceeding which may be instituted against it with respect to the Escrowed Funds, the Real Property or the subject matter of this Agreement unless requested to do so by Purchaser or Seller and unless Escrow Agent is indemnified to its satisfaction against the cost and expense of such defense.

The Supreme Court has established general principles for interpreting indemnification clauses:

Indemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally. When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee. Thus, a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms.

[Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 103 N.J. 177, 191 (1986) (internal citations omitted).]

In Boyle, the Court held: "Although this Court has never previously held that a contract should contain express language to permit indemnification of

first-party claims, our prior decisions support such a conclusion." Boyle, 257 N.J. at 483. While not a bright line rule, the Court explained: "[W]e encourage parties seeking to permit indemnification of first-party claims to include express language to do so. Otherwise, any ambiguity will continue to be construed against the indemnitee." Id. at 483.

Here, there is no clear unequivocal language stating that the indemnification provisions apply to first-party claims. Therefore, the clause must be construed against Old Republic. The trial court did not err in denying Old Republic's motion for attorney's fees.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

31

A-0506-23